NEW YORK CENTRAL RAILROAD COMPANY, Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants, and the Baltimore and Ohio Railroad Company, Canton Railroad Company, Western Maryland Railway Company, Maryland Port Authority, Baltimore Association of Commerce, and the Delaware River Port Authority, Intervening Defendants.

ERIE–LACKAWANNA RAILROAD COMPANY and the Port of New York Authority, Plaintiffs

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants and the Baltimore and Ohio Railroad Company, Canton Railroad Company, Western Maryland Railway Company, Maryland Port Authority, Baltimore Association of Commerce, and the Delaware River Port Authority, Intervening Defendants.

United States District Court
S. D. New York.

Dec. 19, 1961.

Sidney Goldstein, New York City and Samuel H. Moerman, Washington, D. C. (M. C. Smith, Jr., J. T. Clark, Cleveland, Ohio, F. A. Mulhern, Newark, N. J., and Patrick J. Falvey, New York City, Arthur L. Winn, Jr., Washington, D. C., J. Raymond Clark, Philadelphia, Pa., and James M. Henderson, Washington, D. C., of counsel), for Erie-Lackawanna R. Co. and Port of New York Authority, plaintiffs.

Richard J. Murphy, Chicago, Ill., George J. Schwarz, New York City (Gerald E. Dwyer, Robert D. Brooks, New York City, of counsel), for New York Cent. R. Co., plaintiff.

Robert M. Morgenthau, U. S. Atty., by Robert M. Hausman, New York City, for United States of America and Interstate Commerce Commission, defendants.

Donald M. Dunn, New York City, and Franklin G. Allen, Baltimore, Md. (William L. Marbury, John C. Cooper, III, Baltimore, Md., Donald Macleay, Washington, D. C., J. Crossman Cooper, Jr., Baltimore, Md., Karl J. Grimm, Baltimore, Md., of counsel), for Baltimore & O. R. Co., Canton R. Co., Western Maryland R. Co., Maryland Port Authority and Baltimore Ass'n of Commerce, intervening defendants.

Warren Price, Jr., Washington, D. C. (David Hartfield, Jr., New York City, Morris Duane, Philadelphia, Pa., Francis W. Sullivan, Philadelphia, Pa., Bruce A. Wallace, Camden, N. J., of counsel), for Delaware River Port Authority, intervening defendant.

Before FRIENDLY, Circuit Judge, and METZNER and FEINBERG, District Judges.

FRIENDLY, Circuit Judge.

Plaintiffs, in one the New York Central R. R. Co. and in the other the Erie-Lackawanna R. R. Co. and the Port of New York Authority, have brought these actions to enjoin so much of an order of the Interstate Commerce Commission as directs the plaintiff carriers to cancel proposed tariffs that would have reduced the rates on imported iron ore from New York to steel-producing centers in eastern Ohio and in West Virginia to the same level as those established from Baltimore and Philadelphia.[1] In compliance with 28 U.S.C. § 2284, Judge Metzner requested that two other judges be designated to serve with him. The Baltimore & Ohio R. R. Co., other railroads serving Baltimore, the Maryland Port Authority, the Baltimore Chamber of Commerce, and the Delaware River Port Authority (sometimes hereafter "the Baltimore interests"), having intervened to support the order as here questioned, have moved that these actions be transferred to the

District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a). Plaintiffs oppose a transfer; on the argument the United States and the Interstate Commerce Commission took "a neutral position." Although the motion could be decided by a single judge in the first instance, 28 U.S.C. §§ 2284(5), 2325, his action would be reviewable by the full court under § 2284(5). Hence, as requested by the parties, the court of three judges has considered the motion. We conclude it should be denied.

■ A simplified statement of the long background is as follows: Historically the rail rates on imported iron ore from Atlantic ports to Central Freight Association territory were lower from Baltimore than from Philadelphia and lower from Philadelphia than from New York. In 1953 the roads serving Philadelphia and New York filed tariffs reducing their rates to the Baltimore level. Baltimore interests protested; also, as an alternative means of preserving the historic differentials, the carriers serving Baltimore filed proposed reductions. The Commission suspended all the tariffs. Ultimately it approved the reductions proposed for New York and Philadelphia and disapproved those with which the Baltimore carriers had countered, thereby permitting parity among the three ports.[2] The Baltimore interests sued in the District of Maryland to enjoin the orders; the New York and Philadelphia interests intervened to support them. In 1957 a court of three judges, in a comprehensive opinion by Judge Soper, set aside the orders insofar as they approved parity for New York and remanded for further findings with respect to parity for Philadelphia (save in one respect as to which it affirmed). Baltimore & Ohio R. R. Co. v. United States, 151 F.Supp. 258 (D.Md.1957). The Supreme Court, believing "that, in reconsidering the relationship between the Philadelphia and

---

1. Iron Ore from Eastern Ports to Central Freight Association Points, I. & S. Docket No. 6074, 314 I.C.C. 149 (1961).

2. 299 I.C.C. 195 (1956), reversing a contrary conclusion of Division 2, 291 I.C.C. 527 (1954) with respect to the New York rates.

Baltimore schedules pursuant to the remand of the District Court, the Commission should be free to reconsider and take action upon the New York schedules," vacated so much of the District Court's order as had set aside the approval of the reduced rates from New York, and included the New York rates in the remand to the Commission, I. C. C. v. Baltimore & Ohio R. R. Co., 355 U.S. 175, 78 S.Ct. 189, 191, 2 L.Ed.2d 183 (1957).

On the remand, the Commission, on June 15, 1961, in the order cited in fn. 1, reverted to the position that had been taken by Division 2 in 1954, namely, a provision of parity as between Baltimore and Philadelphia but a requirement of higher rates from New York. Eleven days later the Baltimore interests sued in the District of Maryland to set aside the order insofar as it permitted the Philadelphia rates to be reduced to the Baltimore level; naturally they tendered no issue with respect to the New York rates, as to which they had prevailed.[3] On July 20, the Central and, on July 25, the Erie-Lackawanna and the Port of New York Authority brought these actions in the Southern District of New York to enjoin the portion of the order forbidding reduction of the New York rates. There followed the interventions and motions to transfer on the part of the Baltimore interests recounted above.

28 U.S.C. § 1404(a) provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have

been brought." Since a suit to enjoin an order of the Interstate Commerce Commission is a "civil action", over which 28 U.S.C. § 1336 gives the district courts jurisdiction, we have no doubt that such a suit may be transferred under § 1404 (a) if the statutory conditions are met.[4] Meeting them, however, presents problems quite different from the usual case. Here there are no "witnesses" to be convenienced. Although a transfer to Maryland would convenience the intervenors, both in getting back home and by having only one suit instead of two, it would equally inconvenience the plaintiffs who would be taken away from home and forced into a suit involving issues in which they profess to have no concern; and the United States and the Commission say they do not care. Indeed, the Baltimore interests do not rest their case for transfer on that basis; they rely rather on the familiarity of the District Court for Maryland with the issues, the possible necessity of interpreting that court's 1957 opinion, and what they regard as the undesirability of a decision in this District that would run counter to the views the Maryland court expressed in the previous case or may express in discussing other issues in the one now pending.[5] They say, in other words, that the transfer would be "in the interest of justice" even though not shown to be warranted "for the convenience of parties and witnesses" in the ordinary sense of those terms. Assuming in intervenors' favor that a transfer under § 1404(a) may be directed solely on that account[6] although the letter of

3. This was an entirely new action, No. 13129, not a continuation of the 1956 action, No. 9237.

4. This would seem to follow a fortiori from Ex parte Collett, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949), and United States v. National City Lines, Inc., 337 U.S. 78, 69 S.Ct. 955, 93 L.Ed. 1226 (1949); even the Justices there dissenting thought § 1404(a) applied to "any civil action as to which the venue provisions are codified in revised Title 28", 337 U.S. at 84, 69 S.Ct. at 958.

5. Although the New York rates are not at issue in the action now pending in Maryland, intervenors argue, and we accept for present purposes, that a decision in favor of the Baltimore interests that are plaintiffs in that action would be irreconcilable with a decision for the New York interests that are plaintiffs here.

6. Internatio-Rotterdam, Inc. v. Thomsen, 218 F.2d 514 (4 Cir., 1955), may be taken as approving this. The decision is criticized in 68 Harv.L.Rev. 1069 (1955), has been referred to as "in some other

the section might suggest otherwise, and also that a sufficient case to that end has here been made, we nevertheless are compelled to deny the motion because the District of Maryland was not a district where these actions "might have been brought."

28 U.S.C. § 1398, a part of Chapter 87 entitled, "District Courts; Venue", directs that "Except as otherwise provided by law, any civil action to enforce, suspend or set aside in whole or in part an order of the Interstate Commerce Commission shall be brought only in the judicial district wherein is the residence or principal office of any of the parties bringing such action." [7] None of the plaintiffs in the actions in the Southern District of New York has its residence or principal office in the District of Maryland. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 1085, 4 L.Ed.2d 1254 (1960), ruled against a claim that an action "might have been brought" in a district where a defendant seeking transfer could not have been served with process and would have had a valid venue objection, although by his motion he accepted the jurisdiction of, and forewent objection to venue in, the proposed transferee court. We do not read the opinion as limited to cases presenting such a conjunction of jurisdiction and venue deficiencies; it approved, p. 344, 80 S.Ct. p. 1090, the statement of the Seventh Circuit, 260 F.2d 317, at 321, and Behimer v. Sullivan, 261 F.2d 467, at 469, that the statutory test is met only "If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant." Cf. Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). Neither do we see any valid basis for distinction in the fact that, in the two cases dealt with by the Supreme Court in Hoffman, it was the defendants who were being sued in the wrong district from a venue standpoint whereas here it would be the plaintiffs who would be suing in the wrong place; the defendants could still object. Hence, even if we should construe the somewhat equivocal statement here made by the Government as an agreement to waive venue objections in Maryland, and if we were further to assume that such objections either could not or would not be made by any intervenor, the transfer motion seems to face an insurmountable obstacle.

Recognizing this, the Baltimore interests seek to meet their difficulty as follows: 28 U.S.C. § 2323 provides that "any party or parties in interest to the proceeding before the Commission, in which an order or requirement is made, may appear as parties of their own motion and as of right, and be represented by their counsel, in any action involving the validity of such order or requirement or any part thereof, and the interest of such party." This, the Baltimore interests say, entitles the three New York plaintiffs to intervene as of right in the Maryland suit and to assert their claims there; such an entitlement meets the "might have been brought" requirement.

aspects an anomalous opinion", Mr. Justice Whittaker dissenting in Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 33 fn. 9, 80 S.Ct. 1470, 1478, 4 L.Ed. 2d 1540 (1960), and is discussed by both opinions in Goldlawr, Inc. v. Heiman, 288 F.2d 579 (2 Cir., 1961), cert. granted 368 U.S. 810, 82 S.Ct. 33, 7 L.Ed.2d 19 (1961). See also, tending to support the view that a transfer may be ordered "in the interest of justice" although ordinary convenience-of-parties-and-witnesses considerations are absent, the statement of the majority in the Continental Grain Co. case at p. 26 of 364 U.S., at p. 1475 of 80 S.Ct.; Webster-Chicago Corp. v. Minneapolis-Honeywell Regulator Co., 99 F.Supp. 503, 506 (D. Del.1951); and Fein v. Public Service Coordinated Transport, 165 F.Supp. 370, 371 (E.D.Pa.1958). Usually, of course, considerations of both sorts are present. See Chicago, R. I. & P. R. Co. v. Igoe, 220 F.2d 299 (7 Cir., 1955).

7. The "Except" clause, apparently intended to refer to 49 U.S.C.A. § 16(2), is not applicable here.

Plaintiffs make a three-fold answer. They deny they could have intervened in the Maryland suit since, as they aver, they have no "interest" in the parity of the rates from Philadelphia, which they do not serve. If that point be held against them, their second line of defense is that, if allowed to intervene in Maryland, they would not be permitted to introduce the new issue of the alleged invalidity of the order cancelling the proposed reductions from New York. Finally, they assert that even if all this could be done, ability to maintain a claim as an intervenor is not enough, since § 1404 speaks of a district where "it", i. e., the action, "might have been brought", not a district where the claim might have been asserted.

In response to plaintiff's first argument, intervenors say that plaintiffs have a very real "interest" in the Maryland suit, since a decision in it that the Commission erred in granting parity to Philadephia,—and the ultimate decision will be the Supreme Court's if the parties choose to carry the case there, 28 U.S.C. § 1253—would provide exceedingly rough sledding for plaintiffs in their effort to show the Commission erred in not granting parity to New York. Clearly plaintiffs do have such a practical interest in the Maryland suit; to decide whether that is enough would require us to determine whether Boston Tow Boat Co. v. United States, 321 U.S. 632, 64 S.Ct. 776, 88 L.Ed. 975 (1944), or Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), is the proper guide.[8] Plaintiffs' third contention, also, is not to be readily dismissed, especially in view of the tendency to give a rather literal reading to § 1404 (a) evidenced by Hoffman. We do not find ourselves required to pass on either of these issues since we are convinced by plaintiffs' second argument, namely, that

even assuming they can intervene in the Maryland suit, they would not have a right in that capacity to assert the invalidity of the Commission's order cancelling the reduced rates from New York. If this is so, then even on the supposition that a right to assert a claim as an intervenor would satisfy the "might have been brought" test, the Hoffman case would preclude transfer although the other parties to the Maryland action might not object to the assertion that is vital to plaintiffs' case.

The basic position of the Baltimore interests in the Maryland action is that the Commission exceeded its legal powers in permitting and, indeed, in forcing parity between Baltimore and Philadelphia, although history, distance and correspondingly higher costs would indicate a higher rate from Philadelphia; they have raised no question as to the rates from New York. The plaintiffs in the New York actions raise no question with respect to the Philadelphia rates; their basic position is that the Commission exceeded its legal powers in insisting that history, distance and correspondingly higher costs allowed it to prevent the establishment of parity between New York and the two other ports.

It is plain that, under federal equity practice prior to 1938, an intervenor would not have been allowed to assert a claim which was thus wholly beyond the issues framed by the pleadings. Chandler & Price Co. v. Brandtjen & Kluge, Inc., 296 U.S. 53, 56–59, 56 S.Ct. 6, 7, 80 L.Ed. 39 (1935), sufficiently proves this. There a manufacturer, entitled to and allowed discretionary intervention in a suit against its vendee for patent infringement, was not permitted to assert a counterclaim against the plaintiff for infringement of the intervenor's patent, which it admittedly could have asserted had it been joined as a defendant.

---

8. It would seem that plaintiffs have another "interest" in the Maryland suit, namely, that the reduction in the Philadelphia rates improves Philadelphia's position not only against Baltimore but against New York. However, in order to assert that "interest", plaintiffs would have to take a position in the Maryland suit opposite to what they are taking here.

The Court said that "intervener's legal position in relation to the case differs essentially from what it would have been had the bill named it as a defendant", that the defendant had no interest in the counterclaim, and that "the intervener was not entitled to come into the suit for the purpose of having adjudicated a controversy solely between it and plaintiff. Issues tendered by or arising out of plaintiff's bill may not by the intervener be so enlarged. It is limited to the field of litigation open to the original parties." A point of particular significance in the light of later developments is that decision was placed, not on the final clause of former Equity Rule 37 requiring that intervention "shall be in subordination to, and in recognition of, the propriety of the main proceeding", but rather on the Rule's opening phrase, "Anyone claiming an interest in the litigation", which was held to be limited to "an interest in the matters there in controversy between the plaintiff and original defendant."

The question is how far this was altered by F.R.Civ.Proc. 24, 28 U.S.C. The Committee's Note, "This rule amplifies and restates the present federal practice at law and in equity", was scarcely a tocsin of enormous change. Although the rule is more specific than its predecessor as to who may intervene, it says little as to what an intervenor may do; in this respect the important change was the omission of the subordination provision of Equity Rule 37 quoted above. Clearly that did work some broadening of the intervenor's status—as, for example, permitting the very motion to transfer which we are here considering—but, equally clearly, it did not so alter historic concepts as to permit an intervenor to assert a claim against the defendants which was not tendered by the complaint and would be based on a legal theory opposite to the plaintiffs', who, on this new claim, would link arms with the original defendants. Whether or not the elimination of the subordination provision, along with the difference in language in F.R.Civ.Proc. 13 as against Equity Rule 30, would call for a different decision on the precise issue presented in Chandler & Price,[9] the Supreme Court does not consider everything said in that opinion to have been rendered obsolete by the new Rule, as witness its statement "As an intervenor the United States was limited to the field of litigation open to the original parties", accompanied by a citation of Chandler & Price, in Columbia Gas & Electric Corp. v. American Fuel & Power Co., 322 U.S. 379, 383, 64 S.Ct. 1068, 1071, 88 L.Ed. 1137 (1944). Moreover, as pointed out above, the Chandler & Price opinion was not rested on the subordination provision of Equity Rule 37 but on a definition of "interest", the very word used in the statute, 28 U.S.C. § 2323, alleged to entitle the New York plaintiffs to intervene in the Maryland suit.

The reliance of the Baltimore interests on such cases as Morris v. S. E. C., 116 F.2d 896, 898 (2 Cir., 1941), and Pacific Gas & Electric Co. v. F. P. C., 253 F.2d 536 (9 Cir., 1958), is misplaced. Those cases arose under statutes, the Public Utility Holding Company Act and the Federal Power Act, which, in providing for review of administrative orders by courts of appeals, say that "Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record shall be exclusive, to affirm, modify, or set aside such order, in whole

---

9. Professor Moore thinks it would, 4 Federal Practice (2d ed. 1950), pp. 109–110, and see his entire discussion of the "subordination" provision and its deletion by Rule 24, ¶¶ 24.16 and 24.17. See also United States to Use and for Benefit of Foster Wheeler Corp. v. American Surety Co., 142 F.2d 726, 728 (2 Cir., 1944); Switzer Bros., Inc. v. Locklin, 207 F.2d 483 (7 Cir., 1953), cert. denied 347 U.S. 912, 74 S.Ct. 477, 98 L.Ed. 1069 (1954); Salem Engineering Co. v. National Supply Co., 75 F.Supp. 993, 997–998 (W.D.Pa.1948); Hartley Pen Co. v. Lindy Pen Co., 16 F.R.D. 141 (S.D.Calif.1954).

or in part." [10] If review of orders of the Interstate Commerce Commission took place under modern statutes of this sort, as proposed by the Judicial Conference of the United States,[11] and the petition and record had been filed in the Fourth Circuit, no proceedings could be taken elsewhere; and even if that circuit's jurisdiction had not yet become exclusive through the filing of the record when a second petition was filed in another circuit, 28 U.S.C. § 2112(a) would require the second court to transfer, with the transferee court then having the right "for the convenience of the parties in the interest of justice" to "transfer all the proceedings with respect to such order to any other court of appeals." [12] Thus, in any event, all issues relating to a single administrative order would be determined by a single court. However, so long as review of Interstate Commerce Commission orders continues, for reasons of history, to take the altogether different form of a suit for an injunction in the District Court, we must apply the statutes governing the transfer of civil actions generally rather than others we might think better adapted to review of administrative action.

We have considered whether, even though we lack power to grant the transfer sought by intervenors, we ought not, of our own motion, take a different step which they have not sought. That would be to stay the prosecution of these actions until the plaintiffs have endeavored to assert their claims in the District of Maryland, either by bringing independent actions or by annexing appropriate pleadings to motions to intervene in the action now pending, F.R.Civ.Proc. 24(c), and have seen whether any objections to their doing so will be abandoned by lapse of time, express waiver or otherwise. The power of a court to enter such a stay in an appropriate case is clear, Kansas City Southern Ry. Co. v. United States, 282 U.S. 760, 51 S.Ct. 304, 75 L.Ed. 684 (1931),[13] and we would exercise it under circumstances similar to that there presented, e. g., if a railroad having its residence and principal office in New York but serving Baltimore were here asserting the same claim as the plaintiffs in the Maryland suit. However, the grant of such a stay rests in the sound discretion of the court. Although the power may exist, we have found no case in which a court has thus stayed proceedings, in an action properly

10. This quotation is from the Holding Company Act, 15 U.S.C.A. § 79x(a). The corresponding provision in the Federal Power Act, 16 U.S.C.A. § 825l(b), has slightly different language but is to the same effect. Similar provisions are contained in the Natural Gas Act, 15 U.S.C.A. § 717r(b), the Securities Exchange Act, 15 U.S.C.A. § 78y, the Investment Company Act, 15 U.S.C.A. § 80a–42 and the Act of Dec. 29, 1950, relating to a number of agencies, 5 U.S. C.A. § 1039.

11. Report of the Judicial Conference, Sept. Session 1945, pp. 17–18; Oct. Session 1946, pp. 16–17; Sept. Session 1947, pp. 18–20; Sept. 27–29, 1948, pp. 40–41; Nov. 29, 1949, pp. 15–18; Sept. 25–27, 1950, pp. 14–15. Although most of these recommendations were adopted in the bill that became the Act of Dec. 29, 1950, 64 Stat. 1131, 5 U.S.C.A. § 1031 et seq., orders of the Interstate Commerce Commission and certain orders of the Federal Communications Commission were excepted.

12. 28 U.S.C. § 2112(a) applies also to administrative orders of agencies, e. g., the Civil Aeronautics Board, 49 U.S.C.A. § 1486, whose review statutes do not contain the "exclusive" language of the statutes cited in footnote 10.

13. See also Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L. Ed. 153 (1936); Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); Alamance Industries, Inc. v. Filene's, 291 F.2d 142 (1 Cir., 1961), cert. denied 368. U.S. 831, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961); General Radio Co. v. Superior Electric Co., 293 F.2d 949, 952 (1 Cir., 1961). Cf. Joseph Bancroft & Sons Co. v. Spunize Co. of America, 268 F.2d 522 (2 Cir., 1960).

brought and not transferable, where the issue is as different from that pending in the other forum as here and the plaintiffs' right to present it in the foreign forum is contingent upon a lack of objection by other parties. Moreover, the considerations urged by intervenors against this Court's exercising jurisdiction are hardly so overwhelming as to warrant a stay; " * * * the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." [14] Even under § 1404(a), "the plaintiff's choice of venue should not lightly be disturbed", 1 Moore, Federal Practice (2d ed. 1960), p. 1778 and cases cited fn. 5, pp. 1783–1784 and cases cited fn. 22; and the consequences of the two courts possibly reaching irreconcilable results on the different issues presented to them are scarcely so grave as intervenors depict, since the Supreme Court will be the ultimate arbiter in any event.[15] Indeed, it is not without relevance that, on the occasion of the prior order, the New England railroads prosecuted, unsuccessfully as it turned out, a suit in the District of Massachusetts to enjoin so much of the order as forbade reduction of the rates from Boston, Boston and Maine R. R. Co. v. United States, 153 F.Supp. 952 (D. Mass.1957), at the same time as the Baltimore interests were assailing the New York-Philadelphia-Baltimore parity in the District Court for Maryland.

The motions are denied. The parties are directed to arrange with Judge Metzner for a hearing date.

---

14. Landis v. North American Co., supra, 299 U.S. at 255, 57 S.Ct. at 166. While this was said as to a stay that would have prevented any proceedings by the party to be stayed, rather than one which merely postponed them until he sought out another, to him less attractive, forum, the principle seems applicable here, although the test may be more easily satisfied.

---

15. The attempt to show the close relationships of the two actions by pointing to the Supreme Court's discussion, in its earlier remand to the ICC, 355 U.S. 175, 78 S.Ct. 189, 2 L.Ed.2d 183 (1957), of the utility of the ICC's being able to consider all the issues once again, does not sufficiently recognize the difference in the roles of an adminsitrative agency and of reviewing courts.