**FLORENS CONTAINER, Plaintiff,**

v.

**CHO YANG SHIPPING, and Inchcape Shipping Services Defendants.**

No. C 01–2226.

United States District Court, N.D. California.

Sept. 4, 2002.

---

Brian R. Blackman, Charles S. Donovan, David R. Ongaro, Schnader, Harrison Segal & Lewis LLP, San Francisco, CA, for Plaintiff.

John F. Meadows, Jedeikin, Meads & Schneider, Mitchell S. Griffin, Rupert P. Hansen, Cox Wootton Griffin Hansen & Poulos LLP, San Francisco, CA, for Defendants.

## ORDER DENYING DEFENDANTS MOTION TO DISMISS AND MOTION TO TRANSFER

JENKINS, District Judge.

### INTRODUCTION

Defendant Inchcape Shipping Services, Inc., (Inchcape) moves this Court, pursuant to Federal Rule of Civil Procedure (Rule) 41(b), to dismiss the present action. Alternatively, Inchcape seeks to transfer the current action to the Northern District of Ohio, pursuant to 28 U.S.C. § 1404(a). Defendant Cho Yang Shipping Co., Ltd., (CYS) (collectively "Defendants") joins in support of both motions.

Defendants' Rule 41(b) motion requires the Court to determine whether this action should be involuntarily dismissed because of the existence of a similar action pending in the Northern District of Ohio. Defendants' alternative motion to transfer venue requires the Court to determine whether the requested venue is one in which the action could have originally been brought. Additionally, this motion requires the Court to exercise its discretion to determine whether a transfer would be more convenient to the parties and witnesses, and further the interests of justice.

### FACTUAL BACKGROUND

In June 1997 and January 1998, Florens and CYS [1] entered into two container lease agreements, an "Equipment Agreement" and a "Long Term Equipment Agreement" (Agreements). Reportedly, both Agreements contained forum selection clauses which designated San Francisco, California as the agreed upon forum for all litigation. (Opp. to Motion to Dismiss, 1: 23–25.) Throughout the following year, CYS breached the Agreement by failing to pay Florens for containers delivered to CYS. (*Id.* at 1: 26–27.) In January 2001, Florens brought an action in this Court to recover debts owed to them by CYS. (*Id.*) This Court issued a Temporary Protective Order restraining CYS from using its property. In consideration for the release of the Protective Order, CYS assigned to Florens, among other things, the right to receive payments from certain CYS freights that were loaded or discharged from vessels within California. (*Id.* at 2: 3–5.)

On May 8, 2001, Horizon Freight System, Inc. (Horizon), filed a complaint and a motion to attach certain CYS assets in the Cuyahoga County Court of Common Pleas (Ohio). Horizon also named Inchcape as a garnishee. (Mot. to Dismiss, 2: 1–5.) On May 25, 2001, Inchcape removed the Horizon action to the Northern District of

---

1. CYS is a Korean based corporation. CYS is now bankrupt and many of the proceedings described herein are a direct result of CYS' bankruptcy.

Ohio. On May 29, 2001, Inchcape filed another action with the same court to recover a separate debt owed to it by CYS. In this action, Inchcape attached $825,000 worth of CYS freight funds pursuant to Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (Rule B). (*Id.* at 2: 15–17.) Both actions were later consolidated into one proceeding. (*Id.* at 2:16–17.)

CYS' default in March 2001 triggered the assignment of freights, and Florens began in earnest to find the assigned freights. (Opp. to Motion to Dismiss, 2: 20–22.) After receiving no assistance from Inchcape[2] and CYS, this Court issued an order demanding that Inchcape provide Florens with information regarding the location of the assigned freights. (*Id.*) Inchcape provided Florens with information indicating that certain freights were located in a Bank One account in Cleveland, Ohio, and an AmSouth bank account in Mobile, Alabama.[3]

On August 8, 2001, Florens moved to intervene in the Horizon/CYS/Inchcape action asserting similar claims to those raised here. (*Id.*) On September 10, 2001, Florens intervened in the Mobile, Alabama action.

## LEGAL STANDARD

Rule 41(b) provides three grounds for involuntary dismissal: (1) failure to prosecute; (2) failure to comply with the Federal Rules of Civil Procedure; and (3) failure to comply with court orders. *See* Fed. R. Civ. Proc. 41(b). Additionally, a motion for involuntary dismissal may be granted for lack of jurisdiction, improper venue and for failure to join a party under Rule 19. See *Kimmel,* 817 F.2d at 40–41. A

dismissal under the Rule's enumerated grounds operates as an adjudication upon the merits. *Id.* Because dismissal "is so harsh a penalty it should be imposed as a sanction only in extreme circumstances." *Dahl,* 84 F.3d at 366.

 A district court may transfer a case pending before it "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under this section, the district court has discretion to "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–499 (9th Cir.2000) (quoting *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (citation omitted)). In considering motions to transfer venue under this section, courts look to: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Kasey v. Molybdenum Corp.,* 408 F.2d 16, 20 (9th Cir. 1969). Additionally, while not dispositive, "the presence of a forum selection clause is a 'significant factor' in the court's § 1404(a) analysis." *Id.* (quoting *Stewart,* 487 U.S. at 29, 108 S.Ct. 2239). The burden is on the moving party to establish that a transfer would allow a case to proceed more conveniently and better serve the interests of justice. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir.1979).

## ANALYSIS

### A. 41(b)

Rule 41(b) provides three grounds for involuntary dismissal: (1) failure to prosecute; (2) failure to comply with the Federal Rules of Civil Procedure; and (3) failure to comply with court orders. *See* Fed. R.

---

**2.** Inchcape collected various CYS freights at port cities throughout the United States and deposited funds in local bank accounts. (Opp. to Motion to Dismiss, 9: 21–24.)

**3.** On May 31, 2001, in an action similar to the one brought in the Northern District of Ohio, Inchcape attached $400,000 worth of CYS freights in Mobile, Alabama.

Civ. Proc. 41(b). Additionally, a motion for involuntary dismissal may be granted for lack of jurisdiction, improper venue and for failure to join a party under Rule 19. See *Kimmel*, 817 F.2d at 40–41. A dismissal under the Rule's enumerated grounds operates as an adjudication upon the merits. *Id.* Because dismissal "is so harsh a penalty it should be imposed as a sanction only in extreme circumstances." *Dahl*, 84 F.3d at 366.

Defendants move this Court, pursuant to Rule 41(b), to dismiss the present action. The Court, however, is unable to determine Defendants' basis for its motion. Defendants' basis is unclear because other than citing to, and requesting relief under this rule, Defendants offer no theory, argument, supporting authority, or evidence to augment its motion.[4] Presumably, Defendants' request this remedy based on the existence of the similar, pending action in the Northern District of Ohio, in which Florens has intervened. If true, Defendants' motion is inappropriate (see permitted uses above). If the Court's presumed basis is not what Defendants' had in mind, then Defendants' lack of clarity in articulating a cognizable basis is equally problematic. Either way, Defendants' failure to adequately support its motion is fatal. Accordingly, the Court denies Defendants' motion to dismiss.

## B. § 1404(a)

A district court may transfer a case pending before it "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under this section, the district court has discretion to "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–499 (9th Cir.2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (citation omitted)). A motion to transfer venue under this section requires the court to consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Kasey v. Molybdenum Corp.*, 408 F.2d 16, 20 (9th Cir.1969). The burden is on the moving party to establish that a transfer would allow a case to proceed more conveniently and better serve the interests of justice. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir.1979).

### 1. Might Have Been Brought

Defendants argue that this action should be transferred to the Northern District of Ohio because Florens has already intervened in the Ohio action and has raised similar claims both here and there. (Mot. to Dismiss, 2:26–3:1.) Defendants argue that transfer will prevent litigation of a duplicative lawsuit, thereby saving judicial resources. (*Id.* at 3:2–4.) Defendants further suggest that transfer is appropriate

---

4. Defendants suggest that *A/S Dampskibsselskabet Svendbord v. United States*, 116 F.Supp. 603 (E.D.Tex. Beaumont Div.1963) and *Thomas v. United States Lines, Inc.*, 371 F.Supp. 429 (E.D.Pa.1974) support its dismissal motion. However, both cases are § 1404(a) transfer cases and do not, in any way, mention dismissal. Defendants' suggestion cannot be further countenanced because the principles which underlie the transfer decisions are inapposite to Rule 41(b) dismissal principles. Even greater still, neither case offers much comparative value for § 1404(a) transfer purposes, because each case involves maritime collisions. In such cases, transfer to the forum wherein the collision occurred makes good judicial sense in that ultimate responsibility for the action can be resolved completely among all the essential parties. Here, however, there is no such "collision," but several different actions arising from differing causes of action. Accordingly, these cases are of little use to the Court.

because Florens claims an interest in funds under attachment in the Ohio action. (*Id.* at 2:26–3:1.)

In response, Florens argues that transfer is inappropriate because it did not have an independent right to file the current action in Ohio. (Opp. to Motion to Dismiss, 4: 22–23.) Florens contends that the Northern District of Ohio was not a district where this action could have originally been brought because (a) CYS is not subject to personal jurisdiction in the Northern District of Ohio, and (b) Florens' right to intervene in the Ohio action does not, of its own accord, satisfy § 1404(a) requirements. (*Id.* at 5: 10–12, 6:12–13.)

### a. Personal Jurisdiction (Rule B)

■ For the reasons which follow the Court finds that CYS is subject to personal jurisdiction in the Northern District of Ohio. As previously noted, CYS is a Korean corporation with no real contacts in, or with, the Northern District of Ohio. Despite this, it remains amenable to suit in the Northern District of Ohio because of the attachment[5] of its funds by Inchcape under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims (Rule B).[6]

■ An attachment under Rule B serves the dual purposes of obtaining *in personam* jurisdiction over the defendant through his property and of securing a fund out of which a judgment may be satisfied. *Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.,* 476 F.Supp. 119 (S.D.N.Y.1979). Additionally, the remedy of maritime attachment is constitutionally sound and provides a jurisdictional basis for an action in admiralty despite the absence of minimum contacts. *Grand Bahama Petroleum Co., Ltd., v. Canadian Transp. Agencies, Ltd.,* 450 F.Supp. 447 (W.D.Wash.1978).

Taken together, the above rules dispel Florens' arguments that CYS is not subject to personal jurisdiction in Ohio. Under the attachment rules, whether CYS has ever been physically present or domiciled in the forum state is immaterial. Here, Florens gained an independent right to bring suit against CYS when its funds where attached on May 29, 2001. Jurisdiction, both subject matter and personal, was conferred upon the Northern District of Ohio by the operation of 28 U.S.C. § 1333, which governs federal maritime actions, and Rule B(1)(a), which provides district courts with *in personam* jurisdiction over an absent foreign defendant through attachment, as outlined above. *See Integrated Container Service, Inc.,* 476 F.Supp. 119; *Grand Bahama Petroleum Co., Ltd.,* 450 F.Supp. 447. Accordingly, the Northern District of Ohio is a district in which this action could have originally been brought. 28 U.S.C. § 1404(a).[7]

---

5. On May 29, 2001, in the Ohio action, Inchcape attached $825,000 of CYS funds pursuant to Rule B.

6. Rule B provides:

(1) When Available; Complaint, Affidavit, Judicial Authorization, and Process. In an *in personam* action:

(a) If a defendant is not found within the district, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

7. In its reply memorandum, Defendants argue that even if Rule B where not controlling, diversity jurisdiction provided Florens with an alternative basis for asserting jurisdiction over CYS in Ohio. However, this outcome would be highly unlikely. While complete diversity existed between Inchcape (AL), CYS (Korea), and Florens (DE), without the operation of Rule B, personal jurisdiction over CYS would not be possible absent a constitutionally-required minimum contacts analysis. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95(1945). And here, the record is devoid of any evidence indicating whether CYS has had

### b. Intervention

Florens contends that its right to intervene in the Ohio action does not necessarily mean that the Northern District of Ohio is a district in which the present action could have originally been brought. (Opp. to Motion to Dismiss, 6: 18–20.) Florens argues that it intervened in the Ohio action to protect its interest in the attached funds in the Ohio bank account, and that if the monies awarded to it are insufficient to make it whole, it will look to Inchcape in the California action for any difference. (Opp. to Motion to Dismiss, 7: 10–13.) In support of its position, Florens cites *New York Cent. R. Co. v. United States* for the proposition that the right of intervention does not guarantee independent satisfaction of the requirements of § 1404(a). 200 F.Supp. 944 (S.D.N.Y.1961); (Opp. to Motion to Dismiss, 6:12–28.)

In *New York Central Railroad*, several New York interests brought suit in the United States District Court for the Southern District of New York seeking to enjoin a portion of an order by the Interstate Commerce Commission. *Id.* at 945. Several Baltimore interests had already filed a similar action in the United States District Court of Maryland, challenging similar orders by the Interstate Commerce Commission. *Id.* at 946. The Baltimore interests intervened and moved to transfer the New York action to Maryland. *Id.* Circuit Judge Friendly denied the motions citing the fact that the district court lacked the power to grant the intervenors request because, as a principle of equity, intervenors claims are effectively subordinate to those of the original parties, and that equity "would not permit an intervenor to assert a claim against the defendants which was not tendered by the complaint and

would be based on a legal theory opposite to the plaintiffs.'" *Id.* at 949–950.

*New York Central Railroad* is distinguishable from the present case. There, the *intervenors* sought transfer against the wishes of the plaintiffs. The intervenors' request presented the District Court of Maryland with a novel and difficult issue with respect to the overall equity of such a proposition. Here, Inchcape and CYS are proper *defendants* who seek to transfer this action to an allegedly more convenient forum, an occurrence not uncommon in the law, and a proposition not at all like that in *New York Central Railroad.*

Here, instead, the question is simple. Was the Northern District of Ohio a district in which this action could have originally been brought? Based on the foregoing, the answer is yes. Clearly, the Northern District of Ohio is a district in which this action could have originally been brought; Florens had an independent right to bring suit against both CYS and Inchcape in the Northern District of Ohio, pursuant to Rule B and 28 U.S.C. § 1333, conferring both personal and subject matter jurisdiction respectively. However, whether Defendants' request to transfer this action to the Northern District of Ohio will be convenient to both the parties and witnesses and whether such a transfer will further the interest of justice, is a separate question, and does not affect where this action "might have been brought." 28 U.S.C. 1404(a).

### 2. Convenience

A motion to transfer venue under this section requires the court to consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Kasey v. Molybde-*

---

any contact with Ohio. More importantly, the Court need not reach this question as the question of CYS' amenability to suit in the

Northern District of Ohio has been already been definitively answered above.

*num Corp.*, 408 F.2d 16, 20 (9th Cir.1969). In judging the weight to be given to a plaintiff's choice of forum, "consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to [plaintiff's] cause of action." *Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir.1968). "If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is only entitled to minimal consideration." *Id.*

### a. Parties

Defendants argue that the Northern District of Ohio is the most convenient forum for all parties involved. (Reply, 8:19–9:1). Defendants argue that this is especially true because Inchcape, Florens and CYS have all appeared in the Ohio action. (*Id.*) In turn, Florens argues that California is the most convenient forum because the forum bears a substantial connection to the subject matter of the action, in accordance with *Pacific Car and Foundry*, 403 F.2d at 954; see (Opp. to Motion to Dismiss, 8: 13.)

■ The Court is persuaded by Florens' argument that the convenience of the parties favors litigation in California. (Opp. to Motion to Dismiss, 8: 10–11.) To begin, Florens' principal place of business is in San Francisco, California. Additionally, the basis of the current action arises out of Florens' efforts "to enforce its perfected security interest in freights collected by [CYS] for cargo loaded or discharged from a vessel in California." (*Id.* at 8:17–19.) Together, both factors provide this forum with two substantial connections with the subject matter of the action. *See Pacific Car and Foundry*, 403 F.2d at 954.

While the Court notes that Inchcape's principle place of business is located in Alabama, and CYS' is located in Korea, the operative facts (the execution of the Agreement, the freights, and the alleged breach) occurred in California, the forum of original selection. *See Id.* Additionally, under Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight in proceedings under this section, and courts generally will not transfer an action unless the "convenience" and "justice" factors strongly favor venue elsewhere. *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir.1985). Here, Defendants arguments with respect to the duplicity [8] of the current action and of Ohio's interest in this action [9] are insufficient to overcome the strong deference given to Florens' choice of forum. *Id.* Moreover, as previously noted, the Northern District of California has a substantial interest both in the subject matter and in its home-state plaintiffs. Accordingly, the Court finds Defendants arguments unpersuasive, instead finding that the convenience of the parties favor litigation in California.

### b. Witnesses

The convenience of the witnesses is often the most important factor. 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3851, at 264 ("If the forum chosen by plaintiff will be most convenient for the witnesses, this is the most powerful argument against transfer.") Here, courts look to who the witnesses are, where they are located, what their testimony will be, and why such testi-

---

8. The Court notes that Defendants' duplicity arguments are significantly weakened by the fact that Inchcape initiated an action in Mobile, Alabama after removing the Ohio state action to the Northern District of California. (Opp. to Motion to Dismiss, 3:15–20.)

9. (See Reply, 9:5.)

mony is relevant. *A.J. Industries, Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir.1974). Here, Florens argues that the convenience of the witnesses weighs in favor of litigating in California. (Opp. to Motion to Dismiss, 9:3.) To support this argument, Florens describes the following account illustrating how local bank witnesses will play a key role within this litigation:

> Florens' action focus on the collection, deposit and location of [CYS] freights for cargo loaded or discharged from vessels in California. Inchcape was responsible for the collection and deposit of those freights ... [CYS] freights were collected at various Inchcape offices in the United States port cities, including Long Beach and San Francisco, California. [ ] Inchcape's local offices deposited those freights into local banks in the port cities. [ ] The funds were then swept into the principal account at Bank One in Chicago, Illinois. [ ] Local bank offices in California, therefore, will provide significant evidence and testimony to assist Florens in location and collecting the assigned freights. Transferring this action to Ohio might preclude the live testimony of these witness.

(Opp. to Motion to Dismiss, 9:15–26.)

▮ The Florens account is persuasive. It informs the court as to who the witnesses are, where they are located, what their testimony will be, and why their testimony is relevant. *A.J. Industries, Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir.1974). Defendants' on the other hand, offer no such account, other than to say that their witnesses reside in Alabama

and Korea. Without a more persuasive account, Defendants, as the parties with the burden of proof, fail to establish that the convenience of the witnesses factor weighs in favor of litigation of California. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir.1979). The party seeking a transfer cannot rely on vague generalizations as to the convenience factors. The moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Defendants have not done so. Accordingly, the Court finds in favor of Florens with respect to this factor.

### c. Interest of Justice

"Many considerations have been evaluated by courts under the heading 'the interest of justice.'" *Los Angeles Memorial Coliseum Commission v. National Football League*, 89 F.R.D. 497, 501 (C.D.Ca. 1981). However, under this heading, Defendants offer no arguments different from those raised above. Accordingly, as the party with the burden of proof, Defendants have failed to establish that transferring the California action to Ohio would better serve the interests of justice. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir.1979).[10]

### CONCLUSION

Based on the foregoing, the Court hereby DENIES both of Defendants' motions. A plaintiff's choice of forum should not be

---

**10.** The Court declines to analyze the parties' forum clause selection arguments because of the cloud which hangs over its validity. First, whether the "Business Terms and Conditions" actually exist is of concern to the Court. While Florens claims that it is attached as Exhibit C to Diane Pyke's Declaration, and is on file with the Clerk's office, the Court has not seen such a document. Further, whether Finally, and more importantly, because forum selection clauses are not dispositive when deciding motions for convenience transfers, the Court's decision to deny Defendants motion does not in any way rely on the parties' forum selection clause argument.

**1094**

lightly disturbed, and Defendants have provided very little evidence to outweigh this initial presumption. Moreover, the Northern District of California has a substantial interest in providing a forum for Florens, a home-state plaintiff, and in the overseeing the subject matter of the cause of action (the Agreement was executed here, the alleged breach occurred here, and the freights which are the basis for Florens' action originate here).

**IT IS SO ORDERED.**