ERIE–LACKAWANNA RAILROAD
COMPANY, Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission,
Defendants.

The Delaware & Hudson Railroad Corporation, Chicago & Eastern Illinois Railroad Company, Milton J. Shapp, City of Scranton and Borough of Freedom, and Boston & Maine R. R. Co., Intervening Plaintiffs,

Pennsylvania Railroad Company, New York Central Railroad Company, Richard Joyce Smith and William J. Kirk, as Trustees for the New York, New Haven & Hartford Railroad Company, Debtor, Intervening Defendants.

The BALTIMORE AND OHIO RAILROAD COMPANY, the Chesapeake and Ohio Railway Company, Norfolk and Western Railway Company, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

The CENTRAL RAILROAD COMPANY OF NEW JERSEY and Reading Company, Plaintiffs,

v.

UNITED STATES of America,
Defendant,

Western Maryland Railway Company,
Intervening Plaintiff.

Nos. 66 Civ. 2860, 66 Civ. 2903,
66 Civ. 2914.

United States District Court
S. D. New York.

July 3, 1967.

See also D.C., 279 F.Supp. 316.

**304**

Cravath, Swaine & Moore, by Thomas D. Barr, and Alexander & Green, Eldon Olson, Harry H. Voigt, John M. Linsenmeyer, New York City, for plaintiff, Erie-Lackawanna R. R.

Nixon, Mudge, Rose, Guthrie, Alexander & Mitchell, by Harry G. Silleck, Jr., New York City, for plaintiff, Delaware & H. R. R.

Arthur Arsham, by Gordon P. McDougall, New York City, for intervening plaintiffs, Milton J. Shapp, City of Scranton and Borough of Freedom.

Gerald E. Dwyer, James B. Gray, J. H. Shapiro, New York City, for intervening defendant, The New York Cent. R. R.

Conboy, Hewitt, O'Brien & Boardman, New York City, for intervening defendant, Pennsylvania R. R., by James B. Gray, Hobert L. Brinsmade, David J. Mountan, Jr., New York City, and Windsor F. Cousins, Philadelphia, Pa.

Howard E. Shapiro, Joel A. Forkosch, William R. Weissman, Washington, D. C., for defendant, United States.

Robert W. Ginnane, Fritz R. Kahn, Washington, D. C., for defendant, Interstate Commerce Commission.

Robert M. Peet, New York City, and Sullivan & Worcester, by Joseph Auerbach, Boston, Mass., for trustees of New York, N. H. & H. R. R.

Kelley, Drye, Newhall, Maginnes & Warren, New York City, Frank H. Heiss, New York City, of counsel, Sidley & Austin, by Howard J. Trienens, Chicago, Ill., Wilmer, Cutler & Pickering, and Wheeler & Wheeler, Washington, D. C., for plaintiffs, Norfolk & W. Ry., Baltimore & O. R. R., and Chesapeake & O. Ry. and intervening plaintiff, Western Maryland Ry.

Richard J. Lally, New York City, Richard B. Wachenfeld, Newark, N. J., and Martin J. Flynn, Washington, D. C., for trustees of the Central R. Co. of New Jersey, plaintiff.

Macklin, Hanan & McKennan, New York City, by William P. Quinn, Philadelphia, Pa., for plaintiff, The Reading Co.

Shea & Gardner, Washington, D. C., for trustees of Property of Central RR. of N. J., debtor.

Walter J. Myskouski, Washington, D. C., for State of New York, intervening defendant.

William J. Lynch, Hartford, Conn., for State of Connecticut, intervening defendant.

Robert M. Morganthau, U. S. Atty. for Southern Dist. of N. Y., Brian J. Gallagher, Asst. U. S. Atty., for the U. S. and the Interstate Commerce Commission.

Migdal, Low, Tenney & Glass, New York City, for New Haven Bondholders Committee.

Hogan & Hartson, Washington, D. C., for Boston and Maine Corp., Edward A. McDermott and James A. Belson, Washington, D. C., of counsel.

Before FRIENDLY, Circuit Judge, and WEINFELD and LEVET, District Judges.

PER CURIAM.

*Memorandum Order*

By a supplemental report and order on reconsideration and further hearing in F.D.No. 21989, Pennsylvania Railroad Company—Merger—New York Central Railroad Company, 330 I.C.C. 328, served June 12, 1967, the Interstate Com-

merce Commission authorized consummation of the merger of the Pennsylvania Railroad Company (PRR) and the New York Central Railroad Company (NYC) on the effective date of the order, to wit, July 17, 1967; the order provided that if the authority therein conferred was not exercised within 180 days thereafter, it should be of no further force or effect. At the same time the Commission issued a further report and order in F.D.No. 21510, Norfolk & Western Ry. Co. and New York, Chicago & St. Louis Railroad Company—Merger, etc., directing inclusion of the Erie-Lackawanna (E-L), the Delaware & Hudson (D & H) and the Boston & Maine (B & M) in the Norfolk & Western (N & W). These rulings have precipitated a number of motions in these actions, have given birth to several new actions, and threaten to spawn still more. N & W has brought suit in the Western District of Virginia to enjoin enforcement of the inclusion order. E-L has brought an action in this court to enforce that order, which N & W has moved to dismiss; the United States and the ICC have moved in the Western District of Virginia for a stay of N & W's action in that court. The D & H and B & M, both of which have petitioned the I.C.C. for reconsideration of the terms of the inclusion order, have also sued in this court; they support the direction for their inclusion in the N & W but challenge the financial terms. The Borough of Moosic has brought an action in the Middle District of Pennsylvania to enjoin the orders both in the merger case and in the injunction case; we are advised that the City of Pottsville has joined in that action and that Milton J. Shapp and the City of Scranton, intervening plaintiffs in these actions, have also intervened as plaintiffs therein. The Trustees of the Central Railroad of New Jersey (CNJ), a plaintiff in one of the actions in this court, have informed us of their intention to urge the CNJ's objections to the PRR-NYC merger not in this court but in the District of New Jersey. The Reading Company, also a plaintiff here, intends to pursue a similar course either in the Eastern District of Pennsylvania or by intervention in some other suit, presumably the CNJ's. The B & O, C & O, N & W, and Western Maryland, plaintiffs or intervening plaintiffs here, also assert and presumably intend to pursue supposed rights to attack the merger order by new actions in what they term "a court of appropriate statutory venue," to wit, the district courts for Maryland, Northern Ohio, and Western Virginia. Such a proliferation of actions in many different courts is a far cry from the expedited and early determination of review proceedings to which a majority of the Supreme Court referred in reversing our denial of a temporary injunction, Baltimore & Ohio R. R. v. United States, 386 U.S. 372, 392, 87 S.Ct. 1100, 18 L.Ed.2d 159 (1967); indeed, considered in the aggregate, it outruns even the fears of the four dissenters as to what may be done by "ingenious counsel bent on delay." 386 U.S. at 472, 87 S.Ct. 1100.

██ In an effort to introduce a modicum of order into so much of this chaos as relates to the Commission's supplemental order in the merger case, PRR and NYC have moved that we require each plaintiff or intervening plaintiff in the instant actions to file supplemental complaints setting forth the claims now made in the light of the Commission's supplemental report on reconsideration, direct that the complaint of any such party not so amending its complaint be dismissed with prejudice, and set a schedule for responsive pleadings, brief and final hearing. There are several kinds of unfinished business in these actions. One concerns objections to the Appendix G protective conditions, now revised, whether on the ground of inadequacy from the standpoint of the three protected roads or on the ground, previously urged by B & O, C & O, N & W, CNJ, the Reading, the Western Maryland, and C. & E. I., "that these provisions created a 'community of interest' between the protected roads" and the merged company which would produce additional diversion, see 259 F.Supp. at 970, 976; we have been told by counsel for the N & W and

other plaintiffs that they regard the revised conditions as even worse in this respect. These railroads and possibly others apparently intend to argue also that the Commission's prescription of any protective conditions was inconsistent with a passage in the Supreme Court's opinion, 386 U.S. at 390, 87 S.Ct. 1100. In addition certain special objections raised by C. & E. I., the Western Maryland, CNJ and the Reading are as applicable to the supplemental order on reconsideration as to those of 1966. Broadest of all is the objection of intervening plaintiffs Milton J. Shapp, the City of Scranton and the Borough of Freedom,[1] which assails the validity of the merger on a wide front. Inherent to all these is the question, raised by another motion discussed below, of extending the injunction against consummation until these issues have been decided.

The N & W, B & O, C & O, Western Maryland, the Trustees of the C.N.J., the Reading,[2] Shapp and the City of Scranton oppose the motion made by the Pennsylvania and the Central; the United States, the Interstate Commerce Commission, and the states of New York and Connecticut support it. The basic claim of the railroads opposing the motion is that the actions in this court have ended and that anyone seeking to attack the supplemental report and order on reconsideration may and indeed must do so in a new action in "a court of appropriate statutory venue"; the N & W and the railroads allied with it contend also that if the inclusion order is ultimately sustained and if the stockholders of the protected roads immediately accept, the protective conditions may never take effect and hence are not now ripe for review. Shapp and the City of Scranton also contend that the actions here have come to an end; they prefer to conduct their further attack on the merger by intervening in the suit just brought by the Borough of Moosic in the Middle District of Pennsylvania against both the

merger order and the inclusion order rather than "in a distant and foreign forum * * *."

The parties opposing the motion are wrong in saying these actions have terminated. The subject of the complaints of the plaintiffs and intervening plaintiffs was the Commission's approval of the merger, as it then stood or as it might stand in the future. All that we had before us for decision last fall and the Supreme Court had before it on appeal, see 386 U.S. at 378, 87 S.Ct. 1100, were motions for interlocutory relief, to wit, temporary injunctions of the merger pending the reconsideration the Commission had already granted; the actions could not proceed to final hearing until that had been completed. The Supreme Court made it clear that the issues of "the validity of the merger, the special conditions of Appendix G, the modified order of the Commission, or the peripheral points posed by the various parties," ibid., remained for final determination in these actions after the Commission had made its supplemental order on reconsideration. Compare Texarkana v. Arkansas Louisiana Gas Co., 306 U.S. 188, 203, 59 S.Ct. 448, 83 L.Ed. 598 (1939); New York Central R. R. v. United States, 207 F.Supp. 483, 498 (S.D. N.Y.1962). Indeed, the position taken by N & W and the roads associated with it in opposition to the motions of PRR and NYC contrasts rather strangely with their own request for further injunctive relief in the actions brought by them in this court. If the actions remain pending for the grant of relief which the N & W and its allies want, especially for what, as will hereafter appear, we consider relief that may go beyond the Supreme Court's mandate, they are pending for other purposes as well.

The idea that litigants challenging an order of a federal administrative agency may invoke the jurisdiction of one federal court, require it to expend

---

1. We are advised that the Borough of Freedom does not intend to participate further.

2. The Reading has moved to "quash" the motion; we deny this.

its energies in becoming familiar with the subject-matter, obtain interlocutory relief against enforcement of the order, and then take their grievances to another federal court which they consider may be more favorable while their complaints remain pending for final disposition, does not commend itself in general; and surely this case, where expedition is so important, would be the last one in which to countenance proceedings of that sort. In re Georgia Power Co., 89 F.2d 218 (5 Cir.), cert. denied, 302 U.S. 692, 58 S.Ct. 11, 82 L.Ed. 535 (1937), sustaining a refusal to allow dismissal without prejudice and an injunction against a second suit, strongly supports our view. Whatever rights many of these plaintiffs initially had to sue elsewhere,[3] they brought their actions to enjoin the merger here, and any objections on the score of venue have long since been waived. The plaintiffs and intervening plaintiffs would have been surprised and rightly aggrieved if, in the event of their desiring to prosecute these actions in this court after the ICC's supplemental report on reconsideration, the United States had insisted that new process issue so that a venue objection could have been taken. Their reliance on New York Central R. R. v. United States, 200 F.Supp. 944 (S. D.N.Y.1961), is wholly misplaced. The issue raised by the parties in that case was whether an action brought here should be transferred to the district court for Maryland under 28 U.S.C. § 1404(a), and we held it could not be. Our remarks as to refusal of a stay of the action in this court must be read in the light of the facts that the New York interests had never invoked the jurisdiction of the District Court for Maryland, since they supported rather than opposed the orders the I. C. C. had initially issued, see 200 F.Supp. at 945; that the Maryland district court had taken final action, Baltimore & Ohio R. R. v. United States, 151 F.Supp. 258 (D.Md.), vacated 355 U.S. 175, 78 S.Ct. 189, 2 L.Ed.2d 183 (1957), and not merely granted interlocutory relief as has been done here; and, as this court noted, that the Maryland interests recognized this by bringing "an entirely new action" after the Commission's further order, see 200 F.Supp. 946 n. 3. While obviously no plaintiff should be forced to litigate against his will, that does not mean that he is wholly free at his own volition to stop litigation in the court of his initial choice and begin again in another, regardless of the interests of other parties and the public interest. See F.R.Civ.P. 41(a) (2). Cf. Harvey Aluminum, Inc. v. American Cyanamid Co., 15 F.R.D. 14 (S.D.N.Y.1953).

As to the argument concerning ripeness, while it is theoretically possible that the protective conditions may never need to be invoked, realism suggests the contrary. If the inclusion order is temporarily enjoined as N & W is asking in its suit in the Western District of Virginia, some time would necessarily elapse between that order becoming final and effectuation of the inclusion of each of the three roads. Stockholder assent can hardly be obtained until the terms become certain. And further problems might arise if inclusion of D & H and B & M were prevented by lack of stockholder approval on the part of E-L or, in the case of B & M, of either E-L or D & H. See Appendix F to Supplemental Report in F.D. No. 21510, General Terms and Conditions 1 and 2. Furthermore, as will hereafter appear, we are reserving the question how far, if we find the supplemental report and order in F.D. No. 21989 to be valid, we will extend the injunction during review of the inclusion order. In any event the Supreme Court's decision requires that the parties and we should make whatever sacrifice there may be in what might turn out to have been an unnecessary task of reviewing

---

3. Once we entertained E-L's suit to enjoin the merger, actions in other districts seeking the same relief might well have been stayed by those courts on the United States' stipulating not to contest venue here. See Kansas City Southern Ry. v. United States, 282 U.S. 760, 763–764, 51 S.Ct. 304, 75 L.Ed. 684 (1931); New York Central R.R. v. United States, 200 F.Supp. 944, 950–951 (S.D.N.Y.1961).

the revised Appendix G conditions, and, as indicated, other questions remain unresolved.

We therefore set the three actions seeking to enjoin the orders in F.D. No. 21989 and 21990, to wit, 66 Civ. 2860, 2903 and 2914, including the complaints of intervenors, for final hearing on September 18, 1967, see F.R.Civ.P. 65(a)(2). Each plaintiff or intervening plaintiff in such actions shall file and serve on or before July 17, 1967 a supplemental complaint setting forth in what respects it objects to the order in F.D. No. 21989 as this now stands and what further relief it seeks. In the absence of good cause shown at the said hearing we intend to dismiss with prejudice the complaint of any plaintiff or intervening plaintiff which has not filed such a supplemental complaint. Responsive pleadings shall be filed and served on or before July 27. Briefs of plaintiffs and intervening plaintiffs shall be filed and served by August 8, answering briefs August 29, and reply briefs by September 12, 1967.

## II.

N & W, B & O, C & O, and Western Maryland have moved that the order entered in these actions on remand from the Supreme Court on April 28, 1967, should be modified by expanding the reference in paragraph 3 to the merger of PRR and NYC authorized by the ICC's orders in F.D. 21989, dated April 6 and September 19, 1966, so as to include the supplemental order on reconsideration served June 12, 1967. This motion must be considered in the context of the language in the same paragraph that the injunction should continue "pending the completion of the proceedings directed by the Supreme Court." The movants contend that such proceedings include not only proceedings for the judicial review of the order on reconsideration in the merger case, F.D. 21989, which we have discussed above, but also the order of the same date in the N & W inclusion proceeding, F.D. No. 21510.

Three different positions as to our duty under the Supreme Court's mandate emerge from the briefs and argument. The movants' position, supported in considerable degree by the United States, is that the injunction must remain in effect until every phase of the orders in both dockets has been finally passed upon by the Supreme Court.[4] At the other end of the spectrum the Interstate Commerce Commission, the State of New York, PRR and NYC, and the Trustees of the New Haven (NH) contend that the Court's only *mandate* was to enjoin consummation until the *Commission* had finished its work in the two cases which the Court outlined, although they acknowledge our power to grant further relief on a proper showing and on conditions designed to insure the greatest possible expedition.[5] E-L and D & H seem to suggest a midway position, that although the Court expected an injunction during further judicial review of both orders, this was dependent on the achievement of expedition.

All these positions find some support in the majority opinion of the Court. The I.C.C. and others joining with it emphasize the Court's narrow statement of its holding, "We hold only that under the uncontradicted findings of the Commission it was necessary for it to conclude the inclusion proceedings, as to the protected railroads, prior to permitting consummation of the merger," and its equally narrow definition of the "sole question before it," 386 U.S. at 378, 87 S.Ct. 1100, another statement which we quote in the margin;[6] and the concluding direction,

---

4. Counsel for the United States reserved judgment on whether the injunction would have to continue during litigation only on the *terms* of inclusion; he thought "there might be some latitude" on that score.

5. It may be that the Trustees of NH do not join in the acknowledgment.

6. "In view of the patent invalidity of the order permitting immediate consummation of the merger and in light of the present status of the litigation before the Commission, we can only conclude that it is necessary that the decision as to the future of the protected railroads and their

"The judgment of the District Court is reversed and the cause is remanded with instructions that it be remanded to the Commission for further proceedings not inconsistent with this opinion." 386 U.S. at 392, 87 S.Ct. at 1110. The parties favoring a broader injunction point in contrast to another passage which we quote in the margin [7] and, more particularly, to the third sentence.[8] Some of the opponents respond with the Court's remark that the N & W had "indicated its acquiescence" to inclusion of the three roads, 386 U.S. at 383, 86 S.Ct. 1100, and argue that whatever the Court may have said about review of an inclusion order was predicated on the assumption that N & W would not challenge the basic validity of such an order (as distinguished from the financial terms) as it has now done. N & W denies this; it says it only indicated acquiescence in an inclusion order upheld on judicial review, see 324 I.C.C. at 28, 148.

■ We find it unnecessary to decide among these contentions at the present time. Enough has already transpired to suggest that, even with a far greater degree of cooperation in carrying out the Supreme Court's instructions than has thus far been manifested, finalization of the inclusion order may prove a much longer and more complicated task than the majority anticipated. In addition to N & W's basic attack on the order, none of the four affected carriers except E-L is satisfied with the financial terms. There is also the possibility, already mentioned, that once these are finally set, rejection by E-L's stockholders would prevent inclusion of D & H and B & M, and rejection by D & H's would prevent the B & M's inclusion; a carrier suffering non-inclusion in N & W as a result of rejection by the stockholders of another would then be entitled to seek inclusion in the PRR-NYC system, with more hearings before the Commission and further judicial review. All this could take years. We do not read the Supreme Court's opinion as directing us here and now to issue an injunction for so long a period, which might have such serious consequences not only to the PRR and NYC and the public served by them but also to NH and the four states heavily dependent upon its service.

On the other hand we do not believe it would be proper to permit consummation of the merger without our hearing and determining objections to the supplemental order in the merger case, F.D. 21989, itself. Enjoining consummation until that time will truly involve a relatively short delay; indeed, if petitions for re-

inclusion in a major system be decided prior to consummation of the Penn-Central merger. This is especially true since the findings and recommendations of Commissioner Webb, as to the inclusion of the three 'protected railroads,' are now under submission to the full Commission and a decision should be reached thereon by [July or August] 1967, we are advised by counsel. This short time would have little effect upon the ultimate consummation of the merger—which has been in the making for some 10 years now—and if it resulted in the future of the protected railroads being finally decided, serious losses to them would be obviated." 386 U.S. at 390, 87 S.Ct. at 1109.

7. " * * * We note and give weight to the estimates of the Commission that the inclusion proceedings of the three roads in the N & W should be concluded in a 'relatively short time.' Our remand should, therefore, entail only a very short delay before the Commission. If its order is attacked in court the hearing there can be expedited, as was this one, and an early determination made. We do not believe that this is too high a price to pay to make as certain as human ingenuity can devise, a just and reasonable disposition of this matter for all of the parties. After all, it is the largest railroad merger in our history and if not handled properly could seriously disrupt and irreparably injure the entire railroad system in the northeastern section of the country—to the great detriment not only of the parties here but to the public convenience and necessity of the entire Nation." 386 U.S. at 392, 87 S.Ct. at 1110.

8. They also stress the language in the passage quoted in fn. 6 as to "the future of the protected railroads being finally decided."

consideration filed in the inclusion case, F.D. 21510, should lead the Commission to postpone the effective date of the order in the merger case, as to which we make no suggestion, there might be none at all. By the time we decide these actions in the early fall many things may be clearer than they now are. If we should determine that the revised protective conditions are satisfactory or require only minor modification and that the order is valid in all other respects, we would have seriously to consider whether the injunction should continue and, if so, how long, to what extent, and on what terms. In this connection attention would have to be given to the Court's observation "that should the immediate consummation of the merger be permitted and at a later date *neither* the interim conditions *nor* the inclusion proceedings be disposed of favorably to the continued existence of the merger, the only remedy remaining would be to set it aside and unscramble the consolidation." 386 U.S. at 391, 87 S.Ct. at 1110. (Emphasis supplied). This could well mean that once the propriety of the protective conditions was established, the merger might be allowed to be consummated and perhaps should be if the balance of interests suggested. On the other hand, if we should find the revised protective conditions invalid or the order unsound in other important particulars, a further injunction would doubtless be required.

We therefore modify paragraph 3 of our order of April 28, 1967, to read:

"3. The orders of the Interstate Commerce Commission entered on April 6 and September 19, 1966, and served June 12, 1967, insofar as they authorize immediate consummation of the merger between the Pennsylvania Railroad Company and the New York

Central Railroad Company are enjoined pending the final determination of these actions by this Court and thereafter for such further time, if any, and to such extent and on such terms as this Court may then direct. The period of 180 days fixed by the Commission in its order served June 12, 1967 for exercising the authority there conferred shall not begin to run so long as such injunction remains in effect."

In order to expedite determination whether a further injunction should be issued in our decision in the fall, all parties seeking such relief shall file and serve applications supported by appropriate affidavits and briefs not later than September 5, 1967; opposing affidavits and briefs shall be filed and served not later than September 14. We shall expect such affidavits to inform us as to the then status and future time-table of proceedings for review of the inclusion order (including the possibility of separate and expedited determination of the validity of the direction for inclusion, as distinguished from the terms); the grounds asserted for invalidating that order in whole or in part and the answers thereto; the views of the three protected roads and the United States whether and why a further injunction is needed;[9] the representations made to the Supreme Court as to judicial review of an inclusion order and of N & W's acquiescence in such an order; the then status of proceedings for the inclusion of N. H. in the PRR-NYC system and of the reorganization of NH under § 77 of the Bankruptcy Act; and any other relevant facts. We shall set a time for argument on such applications at the hearing heretofore directed.

The Clerk shall enter this as an order.

---

9. We emphasize this since no injunction of the merger pending review of the inclusion order would seem to be justified in the interest of the N & W and still less in that of the B & O, C & O or Western Maryland, which have joined in its motion; the interests that would justify a further injunction would be those of E-L, D & H and B & M and the communities they serve.