MARIO MERCADO RIERA y SUCN. ADRIÁN MERCADO RIERA, peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE PONCE, HON. ANTONIO J. MATTA, JUEZ, demandado.

Número: C-63-51    Resuelto: 16 de octubre de 1963

*Charles R. Cuprill, Pedro M. Porrata* y *Benjamín Ortiz,* abogados de los peticionarios; *Efraín Goglas Carvajal,* abogado de los

interventores; *Raúl Matos,* abogado de la demandante en el pleito principal.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Tiene su origen este recurso en una acción judicial incoada por Margarita Mercado Riera el 27 de marzo de 1956, interesando la división de la comunidad de bienes existentes entre los herederos de Don Mario Mercado Riera Montalvo.

En dicha demanda se expuso que tanto la demandante como sus hermanos sobrevivientes Mario y María Luisa y la Sucesión de Adrián Mercado Riera eran condueños de 24 inmuebles descritos allí y que la demandante no deseaba continuar la comunidad. Solicitaba, por tanto, que el tribunal decretara la división o partición de los inmuebles ya mediante adjudicación material de parte de ellos o mediante la adjudicación de determinados inmuebles a cada uno, en la forma más equitativa posible. Pedía al tribunal que adoptare cualquier medida necesaria para lograr dicho fin. Solicitaba igualmente que se decretara vencido desde el 30 de junio de 1956 el contrato de arrendamiento que constituyó Don Mario Mercado Montalvo a favor de Mario Mercado e Hijos el 10 de agosto de 1932, en lo que a los condominios de la demandante concernía.

El 7 de diciembre de 1956 el tribunal dictó sentencia sumaria parcial. Quedó pendiente establecer el valor de los inmuebles.

El 23 de enero de 1959 se dictó sentencia en el pleito declarando con lugar la demanda y ordenando que todos y cada uno de los inmuebles allí envueltos fueran vendidos en pública subasta. La demandante solicitó reconsideración y el 30 de abril de 1959 el tribunal dictó sentencia en reconsideración. En ésta se dispuso que "el o los compradores en la subasta entrarán en la inmediata posesión de los distintos inmuebles descritos en la demanda y en la sentencia original

y en consecuencia se ordena que el alguacil de este Tribunal, una vez vendidos en pública subasta los referidos inmuebles, otorgue la escritura de venta judicial y proceda de inmediato a entregar la posesión material de los mismos al o los adjudicatarios."

Acordamos revisar esa sentencia. La confirmamos. *Margarita Mercado Riera* v. *Mario Mercado Riera y otros*—opinión per curiam de 19 de enero de 1961. Fue confirmada por la Corte de Apelaciones para el Primer Circuito el 26 de abril siguiente.

Para ejecutar la sentencia se celebraron tres subastas, el 25 de octubre de 1961, el 11 de octubre de 1962 y el 9 de enero de 1963, habiéndose vendido en ellas todos los inmuebles con excepción de dos. En la última subasta efectuada le fueron adjudicadas varias fincas a la demandante Margarita Mercado Riera, entre ellas, la finca "La Feliz", sobre la cual trata el incidente que ahora consideramos.

El 12 de enero de 1963 el Alguacil del Tribunal Superior, Sala de Ponce, otorgó escritura de Venta Judicial en la cual traspasó todo derecho sobre los referidos inmuebles a favor de la demandante. Ese mismo día y ante el mismo notario, la demandante vendió cuatro de las fincas que había adquirido en pública subasta a Don Eleuterio Montalvo Ramírez y Don Felipe Pérez Cortés, entre ellas "La Feliz".

Mario Mercado Riera, como condómino y Mario Mercado e Hijos, como acreedora refaccionaria recurrentes aquí, reclamaron de los señores Montalvo y Pérez la propiedad de las cañas sembradas en 80 de las 500 cuerdas de la finca "La Feliz". Los compradores se negaron a reconocerle derecho alguno sobre las mencionadas cañas.

Recurrieron entonces los compradores al Tribunal Superior, para que, dentro del procedimiento de división de comunidad, se determinase quién era el dueño de las cañas. Los condueños demandados se opusieron alegando falta de jurisdicción del tribunal para entender de este asunto dentro del

pleito de división de comunidad. Sostuvieron que ese pleito había terminado ya que se había ejecutado la sentencia y que ciertamente no procedía discutirse dentro del mismo una cuestión que afectaba a personas que no habían sido partes y eran ajenas al asunto sobre el cual versó el pleito.

Los compradores alegaron en la moción radicada que los condueños eran sembradores de mala fe y que las cañas les pertenecían por no ser los demandados terceros de buena fe. No se presentó al tribunal prueba de clase alguna y el caso fue resuelto por los alegatos presentados por las partes.

El Tribunal Superior desestimó la cuestión jurisdiccional y declaró que las cañas eran propiedad de los compradores por haber actuado los condueños demandados de mala fe. [1] Les impuso a éstos $500.00 por concepto de honorarios de abogado.

Resolvimos revisar la resolución dictada.

■ El tribunal de instancia erró al conocer de la moción. El caso en que se funda para sostener su resolución, *Santana v. Quintana*, 51 D.P.R. 794 (1937) es manifiestamente inaplicable. Lo que allí se sostiene, citando del sumario, es que "[s]ujeto a las contingencias que puedan privarle del derecho a cobrar total o parcialmente una sentencia cedídale al dejar de hacer notificación inmediata de la cesión, el cesionario tiene derecho a un auto de ejecución no siendo necesario el que previamente se le sustituya formalmente como parte." Sobre esto no hay duda. El cesionario de una sentencia puede ejecutarla sin tener que solicitar intervención en el pleito ya que está en la misma posición que el acreedor por sentencia. Pero aquí ésa no es la situación de hechos. Aquí, luego de ejecutarse una sentencia y adjudicársele a la parte demandante un inmueble, ésta lo vende a otras personas, las que en unión de la vendedora pretenden dirimir dentro del pleito ya terminado, por haberse ejecutado la sentencia, una

---

[1] Por estipulación de las partes las cañas fueron molidas.

controversia completamente ajena a la cuestión planteada en el pleito principal.

■ Conviene apuntar que no se radicó moción solicitando permiso para intervenir según lo dispone la Regla 21.4 de las de Procedimiento Civil de 1958, pero la acción del tribunal conociendo de la moción radicada la interpretamos como una autorización para hacerlo.

■ Hemos aceptado la intervención aun después de haberse dictado sentencia, cuando, como en *Gerena* v. *Lamela,* 79 D.P.R. 578 (1956), es la única forma en que la parte que la solicita puede defender sus derechos. A ese efecto dijimos "Aunque la intervención, después de la sentencia, no es usual y no se concede generalmente, la misma procede, sin embargo, cuando es la manera más eficaz de proteger los derechos de unos interventores, que de otra forma quedarían obligados por las resultancias del fallo, máxime en un caso como éste, en el cual la otra parte afectada por las resultancias del fallo, no apela del mismo: 4 Moore's *Federal Practice,* 16, sec. 24.13 (segunda ed. de Matthew Bender & Company de 1955); *Rodríguez* v. *Corte,* 68 D.P.R. 978 (Marrero) (1948), cita precisa a la pág. 981." Pero ya hemos visto que en el presente la sentencia no sólo es firme sino que ha sido ejecutada. 4 Moore's, *Federal Practice,* sec. 24.13, págs. 99–100 (2da. ed. 1962); Anotación, *Time for Intervention,* 37 A.L.R.2d 1306, 1352 (1954).

■ Es también regla generalmente aceptada que la intervención no proceda cuando el asunto que se plantea es distinto al que se dirime en el pleito. En *Slusarski* v. *United States Lines Co.,* 28 F.R.D. 388, 390 (D.C.E.D. Penn. 1961) se dijo: "La regla está bien reconocida que una intervención que introduzca al pleito materia litigiosa no relacionada con aquella surgida de la querella original no será permitida. *Babcock* v. *Town of Erlanger,* D.C.E.D. Ky. 1940, 34 F.Supp. 293; *True Gun-All Equipment Corp.* v. *Bishop International Engineering Co.,* D.C.E.D. Ky. 1960, 26 F.R.D. 150." Y la Corte Su-

prema de los Estados Unidos expuso en *Chandler Co.* v. *Brandtjen, Inc.*, 296 U.S. 53 (1935) (²) que:

". . . Es esencial que el solicitante alegue un interés en las cuestiones en controversia entre el demandante y el demandado original. El propósito por el cual la intervención puede ser autorizada es colocar al solicitante en posición de poder alegar en el pleito un derecho suyo respecto a algo en disputa entre las partes originales. La contrademanda del interventor, que no contiene cuestión alguna que concierna al demandado, no constituye el interés a que se refiere la Regla 37.

"La exclusión del litigio de dicha demanda es cónsona con la razón y el interés de justicia. La introducción por intervención de cuestiones ajenas a aquellas que propiamente deben surgir entre las partes originales complica el pleito y puede imponer al demandante una carga sin relación alguna a la cuestión litigiosa surgida de su demanda."

El caso de *Babcock* v. *Town of Erlanger*, 34 F.Supp. 293, 296 (D.C.D.E. Ky. 1940) presenta unos hechos que sirven para ilustrar la regla que acabamos de exponer. Una compañía celebró un contrato con el pueblo de Erlanger para la compra de ciertos bonos con el objeto de construir un acueducto. Se adelantó cierta cantidad de dinero y las obras comenzaron luego que el pueblo contrató la construcción de las mismas. La compañía compradora de los bonos rehusó cumplir con su contrato de compra de bonos alegando que el municipio había falseado ciertos hechos e inició un pleito para rescindir el contrato alegando fraude y para recobrar el dinero que había adelantado. El contratista a quien se le había adjudicado la construcción de la obra solicitó intervención y pidió que se dictara sentencia en contra de la compañía demandante para que se le pagara lo que había invertido hasta la fecha en la obra realizada. Se denegó la intervención. Y citando el caso de *Chandler* se dijo:

---

(²) Se acepta que la jurisprudencia previa a la promulgación de las Reglas de Procedimiento Federales es aplicable, pues éstas codifican la práctica existente. *Babcock* v. *Town of Erlanger*, 34 F.Supp. 293, 295 (D.C.E.D. Ky. 1940).

"Este es simplemente un pleito para rescindir un contrato, como hasta ahora hemos dicho. El querellante tiene derecho a presentar la cuestión de fraude en la obtención del contrato y la corte no debe permitir se introduzca materia litigiosa que no tenga relación con aquella surgida de la querella original."

Al mismo efecto véanse: *Columbia Gas Co.* v. *Amer. Fuel Co.*, 322 U.S. 379, 383 (1944); *New York Central Railroad Company* v. *United States*, 200 F.Supp. 944 (D.C.S.D. N.Y. 1961); Anotación, *Intervention as a Matter of Right*, 84 A.L.R.2d 1412 (1962); 2 Barron & Holtzoff, *Federal Practice and Procedure*, sec. 594 (ed. 1961); cf. *Becton* v. *Greene County Board of Education*, 32 F.R.D. 220, 221 (D.C.E.D. N.C. 1963) y *Díaz* v. *Frontera*, 65 D.P.R. 695 (1946).

■ Ciertamente en un pleito de división de comunidad, no procede discutirse los derechos que otra persona pueda tener sobre las plantaciones de cañas sembradas en una de las fincas objeto de la división y que fue adjudicada a una de las partes y luego vendida a un tercero. La posición de los señores Pérez y Montalvo equivale a sostener que dentro de un pleito de división de comunidad puede dirimirse cualquier controversia relacionada con los frutos de las fincas objeto de la división. Y ya hemos visto que no puede inyectarse una cuestión ajena al pleito principal.

La concurrencia de la vendedora, demandante en el pleito de división de comunidad, en la moción radicada por los compradores no tiene el efecto de darles a ellos el derecho de intervenir. La vendedora no hubiera podido ella misma, inyectar la nueva controversia en el pleito principal. La esencia es la materia, no las partes.

■ Además, no vemos cómo es posible hacer las adjudicaciones que se hacen en la resolución que revisamos—que los condóminos demandados sembraron de mala fe—sin recibir prueba sobre este extremo que pueda ayudar al tribunal a hacer una determinación. Vale apuntar que el condómino Mario Mercado afirma que luego de vencido el contrato de

arrendamiento que tenía la comunidad con Mario Mercado e Hijos, él, como condueño, y con la autorización de la Sucesión de Adrián Mercado y la anuencia de María Luisa continuó cultivando las cañas sembradas a beneficio de todos los condueños. Pero como antes dijimos, no se presentó prueba y ciertamente una controversia de esta naturaleza no puede resolverse sin oir prueba que, de haber sido procedente admitir dentro del pleito, era a la parte promovente a quien en todo caso hubiese incumbido presentar la suya en primer término.

*Se anulará la resolución recurrida.*