CARLOS WESTERBAND, en su carácter de Presidente del PARTIDO "FRENTE UNIDO PUERTORRIQUEÑO", y MODESTO RIVERA RAMOS, en su carácter de Presidente del PARTIDO "FEDERAL UNIONISTA AGRÍCOLA", interventores y peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE BAYAMÓN, SALA DE LO CIVIL, HON. JORGE MELÉNDEZ VELA, JUEZ SUPERIOR, y EMILIO MATOS RÍOS y/o "PARTIDO PROGRESISTA FEDERADO", demandados; JUNTA ESTATAL DE ELECCIONES DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO y su Presidente ERNESTO MIERES CALIMANO y miembros propietarios BALDOMERO ROIG y SAMUEL R. QUIÑONES, peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE BAYAMÓN, HON. JORGE MELÉNDEZ VELA, JUEZ, recurrido; EMILIO MATOS RÍOS, interventor.

*Números:* O-68-120, *Resueltos:* 28 de junio de 1968
O-68-142

*Ángel Roberto Díaz,* abogado de los partidos "Frente Unido Puertorriqueño" y "Federal Unionista Agrícola"; *Rafael A. Rivera Cruz, Procurador General,* y *J. F. Rodríguez Rivera, Subprocurador General,* abogados de la Junta Estatal de Elecciones y su Presidente Señor Ernesto Mieres Calimano; *Jorge Luis Córdova Díaz, Francisco Ponsa Feliú, Enrique Córdova Díaz, Carlos Romero Barceló* y *Juan Antonio Palerm,* abogados de Emilio Matos Ríos y/o "Partido Progresista Federado".

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En el recurso O-68-120 expedimos *certiorari* para resolver sobre un derecho de intervención. Los hechos a considerar son los siguientes:

(1) En agosto 21, 1967, se recibió en la Junta Estatal de Elecciones una comunicación de la Sra. Magdalena López, Secretaria de la agrupación política Progresista Federado, solicitando del Superintendente de la Junta Estatal de Elecciones:

(i) Que se cambiara su nombre de Partido Progresista Federado a Partido Progresistas Unidos;

(ii) Que se eliminara la insignia de la palma real y las palmas cruzadas y se dejara la palma de cocos como insignia de la agrupación;

(iii) Que se sustituyera la Directiva del Partido por otras personas mencionadas en dicha comunicación.

(2) La anterior comunicación fue considerada por la Junta Estatal de Elecciones al siguiente día en su reunión de 22 de agosto de 1967. Resolvió la Junta en lo pertinente à este recurso:

(i) Que el nombre "Progresistas Unidos" contenía parte de nombres de agrupaciones que desde el 21 de noviembre de 1966 habían solicitado de la Junta el reconocimiento preliminar en el proceso legal de inscripción de un partido político y que habían entrado en tal proceso de inscripción por haber radicado peticiones que estaban ante la consideración de la Junta bajo el nombre de "Frente Unido Puertorriqueño", cuyo principal director lo era el Sr. Carlos Westerband; y

(ii) "Por haber sometido la agrupación Progresistas Unidos una insignia para la consideración de la Junta Estatal de Elecciones que viola las disposiciones de la ley."

Los anteriores acuerdos fueron adoptados por unanimidad de los miembros de la Junta Estatal de Elecciones según certifica su Secretario Sr. Carmelo J. Gorritz.

(3) En 24 de agosto de 1967 el Superintendente General de Elecciones contestó a la Sra. Magdalena López la carta de 21 de agosto y le informó que la Junta había rechazado la petición.

(4) No estando conforme con el fallo de la Junta, al día siguiente 25 de agosto de 1967 se radicó en la Sala de San Juan del Tribunal Superior la acción Civil #67-4552 sobre Revisión, por Luis A. Ferré, José Menéndez Monroig, Emilio Matos Ríos y Magdalena López Otero como peticionarios, contra la Junta Estatal de Elecciones, su Presidente Sr. Ernesto Mieres Calimano y sus miembros propietarios señores Baldomero Roig y Samuel R. Quiñones. La acción fue para revisar la decisión de la Junta de 22 de agosto denegatoria de los cambios solicitados. En 31 de agosto de 1967 la Sala de San Juan del Tribunal Superior dictó auto requiriendo a la Junta para que en el término de 10 días remitiera al Tribunal el expediente relacionado con el asunto a que se refería el recurso de revisión. Como consecuencia de un incidente de traslado y de eliminación de partes, el recurso quedó finalmente radicado en la Sala de Bayamón del Tribunal Superior bajo el número 67-3231, quedando como único peticionario el Sr. Emilio Matos Ríos. La Junta, representada por el Secretario de Justicia, contestó la solicitud de revisión y alegó en apoyo del acuerdo impugnado.

### La Jurisdicción

Los aquí peticionarios hacen alegaciones en este recurso referentes a la jurisdicción de la Sala sentenciadora sobre la materia. Uno de sus argumentos para que le permitamos intervenir en el pleito es el derecho que alegan tener para impugnar ante la Sala sentenciadora su jurisdicción.

En resguardo de nuestra propia jurisdicción para hacer pronunciamientos en este recurso, ya que de no tener jurisdicción sobre la materia la Sala sentenciadora carecería tam-

bién este Tribunal de jurisdicción sobre la materia en segunda instancia, pasaremos a considerar la misma.

La Sec. 37 de la Ley Electoral según quedó enmendada por la Ley Núm. 3 de 26 de marzo de 1964—16 L.P.R.A. sec. 112—legisla sobre la Candidatura por Petición y dispone que:

"[N]inguna *agrupación política* que quiera inscribir una candidatura o constituirse en partido por petición usará o adoptará en todo o en parte un nombre o emblema que previamente se hubiere usado o adoptado por cualquier otro *partido político* o ningún nombre o emblema en todo o en parte similar a un nombre o emblema previamente usado o adoptado por otro *partido político,* si tal otro *partido* todavía reclamare y usare dicho nombre o emblema. *Tampoco se usará o adoptará ningún nombre, emblema o insignia cuyo uso, para fines electorales, esté prohibido por ley."* (Énfasis nuestro.)

Después de disponer en detalle sobre normas y requisitos a ser cumplidos en las peticiones para inscribir candidatos, estatuye la propia Sec. 37 que dichas peticiones nombrando candidatos deberán radicarse en la oficina de la Junta Estatal de Elecciones no más tarde de las 12 del mediodía del día primero de junio del año de las elecciones a las cuales se refieren. La Junta Estatal no está autorizada y no tendrá poder de juzgar sobre la elegibilidad de un candidato cuyo nombre se archive en su oficina, pero tiene poder expreso la Junta, según dicha Sec. 37, para determinar sobre la validez de todas las peticiones, y adoptar los acuerdos que correspondan con arreglo a la ley.

Se dispone a renglón seguido que cualquier decisión de la Junta Estatal de Elecciones podrá ser revisada, a instancia del peticionario o del recusador, por el Tribunal Superior de la demarcación territorial donde radicare el precinto en que se juró la petición; y toda revisión establecida bajo esas disposiciones deberá ser radicada dentro de un término de 5 días a partir de la fecha de la decisión de la Junta, y la

misma será ventilada y resuelta dentro de un término que no excederá de 20 días a partir de la fecha de su radicación.

■ El procedimiento de revisión seguido en este caso radicado en el Tribunal Superior dentro de los 5 días de la decisión de la Junta, referente dicha decisión a candidaturas por petición reglamentadas por la Sec. 37 de la Ley Electoral, fue un procedimiento correcto que le dio jurisdicción a la Sala sentenciadora sobre la materia. [1] Ante los hechos señalados no era de aplicación, como insinúan los aquí peticionarios, el procedimiento dictaminado en la Sec. 12 de la Ley Electoral según quedó enmendada por la Ley Núm. 3 de 5 de octubre de 1965 disponiendo que para que todo acuerdo de la Junta Estatal de Elecciones tenga efectividad y validez, deberá ser aprobado por unanimidad de los votos de sus miembros representantes de los partidos políticos, y si no recibiere unanimidad de votos será decidida por el Superintendente General de Elecciones, considerándose la decisión de éste como la de la Junta. En tal caso podrá apelarse la decisión *por cualquier miembro de dicha Junta* representante de un partido político conforme a la Sec. 13 (d) de la Ley Electoral, o sea ante el Juez Presidente del Tribunal Supremo.

Resuelta nuestra jurisdicción, continuaremos con la exposición de los hechos.

(4) Revisada la decisión de la Junta de 22 de agosto de 1967 al nivel administrativo, en 13 de febrero de 1968 el

---

[1] Siendo éste un procedimiento ante el Tribunal Superior que procede de un organismo administrativo, la decisión en los méritos del Tribunal Superior es revisable por este Tribunal por *certiorari*, conforme lo dispone la Sec. 14 (d) de la Ley de la Judicatura, Núm. 11 de 24 de julio de 1952, según enmendada por la Ley Núm. 115 de 26 de junio de 1958. Este recurso de *certiorari* está reglamentado por la Regla 15.1 (a) del Reglamento de este Tribunal y no tiene término expreso para ser interpuesto. El recurso que consideramos, no obstante, es un *certiorari* clásico por cuanto se está revisando una resolución del Tribunal Superior, negando una intervención, dictada *con posterioridad al fallo.* Sec. 14 (e).

Tribunal Superior dictó sentencia con los siguientes dos pronunciamientos básicos:

(i) Que la agrupación Partido Progresista Federado tenía derecho a cambiar su nombre por el de Partido Progresistas Unidos y a usar la palabra "Unidos" en su nombre.

(ii) Que dicha agrupación Partido Progresista Federado tenía derecho a usar como insignia la palma de cocos por no ser éste un símbolo prohibido por ley a tenor de la prohibición contenida en la Sec. 37 de la Ley Electoral. En la parte dispositiva de su sentencia ordenó el Tribunal a la Junta que procediera a la inscripción de dicha agrupación con el nombre de Partido Progresistas Unidos y con la insignia de la palma de cocos una vez se radicaran en dicha Junta las declaraciones juradas de los miembros de la nueva directiva nombrada aceptando dicha designación y declarando estar dispuestos a cumplir con las encomiendas de los peticionarios; y se radicara bajo juramento por los miembros originales del Organismo Central un certificado de los acuerdos tomados por ellos y que fueron notificados a la Junta por la Sra. López en su carta de 21 de agosto de 1967. La sentencia en los méritos fue notificada a las partes en 13 de febrero de 1968.

(5) En 19 de febrero de 1968 se radicó ante la Sala sentenciadora por los aquí peticionarios Carlos Westerband como Presidente del Partido Frente Unido Puertorriqueño y Modesto Rivera Ramos como Presidente del Partido Federal Unionista Agrícola, moción de intervención y para que se dejara sin efecto la sentencia dictada.

(6) En síntesis, uno de los interventores alegó tener derecho preferente al uso del nombre "Unidos", y el otro, al símbolo de la palma de cocos por lo que, según ellos, la sentencia dictada les afectaba sus derechos preferentes. En cuanto a la insignia palma de cocos, alegó el interventor Modesto Rivera Ramos que la sentencia desposeía a su agrupación de dicho símbolo . . . "si es que el uso electoral de la palma de cocos como insignia es permitida. . . ." "Si es que la palma de cocos se permite como insignia a pesar de haber sido de hecho usada junto a la palma real en la

campaña plebiscitaria." En su petición de *certiorari* ante nos hay parecida expresión por parte de los interventores aquí peticionarios.

(8) Posteriormente los allí interventores negaron también la jurisdicción de la Sala sentenciadora sobre la materia, cuestión ésta que ya ha quedado decidida anteriormente.

(9) El Tribunal señaló la sesión del 14 de marzo de 1968 para oir a los interventores y se practicó prueba. El mismo día, 14 de marzo, la Junta compareció por separado solicitando que se dejara sin efecto la sentencia de 13 de febrero por el fundamento de que hasta esa fecha no se había recibido en la Junta escrito alguno dando cumplimiento a lo ordenado en la parte dispositiva de la misma. Se alegó en dicho escrito que por el contrario, la Junta tenía información en el sentido de que el peticionario Matos Ríos y su agrupación Partido Progresistas Unidos se habían reunido en convención y habían acordado disolverse como agrupación política para unirse al Partido por petición denominado Partido Nuevo Progresista. Este planteamiento de la Junta no fue dilucidado en la vista del 14 de marzo para oir a los interventores. Se dilucidó en una vista posterior celebrada el 25 de abril de 1968. (²)

(10) La prueba oral así como la documental practicada en el incidente de intervención versó sustancialmente sobre cuál de las agrupaciones políticas en controversia y en proceso de inscripción tenía, con preferencia a la otra, el derecho a usar un nombre en uno de los casos, y una insignia en el otro. En vista de la disposición que hacemos del recurso no es necesario que analicemos detalladamente dicha prueba, sobre todo ante la declaración del Superintendente de Elecciones en el récord al efecto de que no existía determinación

---

(²) En 7 de junio de 1968 expedimos *certiorari*—O-68-142—para revisar la resolución del Tribunal Superior sobre este planteamiento emitida en 6 de mayo de 1968, que estamos también resolviendo. Ambos recursos se han consolidado para fines de su decisión.

de la Junta concediéndole afirmativamente el uso de la palma de cocos a la otra agrupación que la reclamaba, ni había certificado como partidos políticos a las agrupaciones de los interventores con el uso de esa insignia y el nombre en litigio.

Hubo prueba traída por el interventor Rivera Ramos tendente a demostrar que las 42 peticiones que la agrupación Progresista Federado había inscrito en Culebra con la insignia de la palma de cocos habían sido recusadas en cuanto a su validez conforme a lo dispuesto en la Sec. 37 de la Ley Electoral. La Sala sentenciadora en su resolución negando la intervención hizo pronunciamientos sobre este particular.

(11) Hay en los autos documentos sobre los siguientes extremos:

(i) En 18 de febrero de 1968 el Partido Nuevo, partido político por petición inscrito, (³) celebró asamblea y con miras a la decisión del Tribunal Superior de 13 de febrero de 1968 reconociendo el derecho a la agrupación Progresista Federado a usar la insignia de la palma de cocos y el nombre Unidos, resolvió autorizar a su Comité Directivo Central para adoptar aquellos acuerdos pertinentes para *unirse oficialmente* con el movimiento Progresista Federado y cambiar el nombre del partido a *Partido Nuevo Progresista,* y utilizar como *única* insignia la de la palma de cocos.

(ii) En Asamblea celebrada por la agrupación política Progresista Federado en 10 de marzo de 1968, 4 días antes de la vista del incidente de intervención, se acordó ratificar el acuerdo del Organismo Directivo Central de dicha organización dejando únicamente como insignia la palma de cocos "para usarse por el Partido Nuevo Progresista, o sea, por el partido creado por la *fusión* o *unión* de este Partido con el Partido Nuevo, a la cual insignia podrá añadírsele,

---

(³)La Sec. 14 de la Ley Electoral dispone que los partidos políticos son los partidos principales, y los partidos por petición. (Véase el resto de dicha sección.)

si así lo deseare el Organismo Directivo Central o el Comité Ejecutivo del Partido Nuevo, la insignia de la Herradura y el lema o palabra que crea y estime conveniente el Organismo Directivo Central y/o el Comité Ejecutivo del Partido Nuevo. De manera pues que la insigna de esta agrupación al *unirse, fusionarse* o *agruparse* con el Partido Nuevo bajo el nombre de Partido Nuevo Progresista será la Palma de Cocos, la Herradura y un lema, si así lo deseare el Organismo Directivo Central y/o el Comité Ejecutivo del Partido Nuevo."

Se resolvió que el Organismo Directivo Central del Partido Progresista Federado existiría única y exclusivamente hasta tanto se llevara a cabo la *fusión, unión* o *agrupación* de ambas partes en uno solo, desde cuyo momento el Organismo Directivo Central y/o Comité Ejecutivo, será el Organismo Directivo Central y/o Comité Ejecutivo que actualmente tiene el Partido Nuevo. Para dar cumplimiento a los anteriores acuerdos se resolvió autorizar a los funcionarios pertinentes para que formularan y ejecutaran los documentos necesarios.

(iii) En cumplimiento de los acuerdos transcritos, en 19 de marzo de 1968, con posterioridad a la vista del incidente de intervención pero antes de ser resuelto dicho incidente, se reunió el Comité Directivo Central del Partido Nuevo y del Partido Progresista Federado y a tenor de los acuerdos aprobados por sus respectivas organizaciones, acordaron: "efectuar oficialmente la *unión, fusión* e *integración* del Partido Nuevo con el Partido Progresista Federado, para que este último pase a formar parte integrante del Partido Nuevo, *aportando sus nombres e insignias a dicho Partido Nuevo*". . . "que el Partido Nuevo *integrado, unido* y *fusionado* con el Partido Progresista Federado utilice la insignia de la palma de cocos que ha venido utilizando el Partido Progresista Federado y el *nombre de Partido Nuevo Progresista*." Se resolvió autorizar al Secretario General para dar los pasos necesarios de modo que se reconozca la inte-

gración del Partido Progresista Federado con el Partido Nuevo, el cambio de nombre a *Partido Nuevo Progresista*, y la limitación de la insignia a la palma de cocos con la adición de un lema que dirá: "Seguridad, Igualdad y Progreso".

■ Considerando los hechos expuestos que surgen del récord y de los documentos elevados en cumplimiento del auto expedido, este Tribunal llega a las siguientes conclusiones:

(a) En lo que respecta al aquí peticionario e interventor Sr. Carlos Westerband y su agrupación, no hay razón para permitirle intervenir ante el tribunal de instancia. Los hechos indubitados demuestran que ni la agrupación Progresista Federado por sí sola, o ya unida, integrada o fusionada con el Partido Nuevo Progresista, ni éste, que es un partido por petición, han de usar ni usan la palabra "Unidos" en su nombre. Así ha sido aceptado ante este Tribunal. En consecuencia, ningún derecho tendría ya que defender el peticionario Westerband y su agrupación mediante la intervención ante la Sala sentenciadora, como consecuencia del fallo.

(b) En lo que respecta al otro peticionario e interventor Sr. Modesto Rivera Ramos y la agrupación que dirige, no serviría propósito alguno el permitirle intervenir. Ello es así porque el acuerdo de la Junta Estatal de Elecciones de 22 de agosto de 1967, negando a la agrupación Progresista Federado el uso de la palma de cocos, no tuvo por fundamento el que este emblema ya estuviera siendo usado con prioridad por la agrupación del peticionario Sr. Rivera Ramos o por otra alguna. La negativa de la Junta se basó en que la insignia de la palma de cocos violaba las disposiciones de la ley.[4]

---

[4] Véase Sec. 37, antes citada, en concordancia con el Art. 26 de la Ley Núm. 1 de 23 de diciembre de 1966, que reza: "Las insignias que aparezcan en las papeletas que se usen en el plebiscito no podrán utili-

(c) Nada hay en los autos demostrativo de que la *Junta* haya permitido el uso de la palma de cocos como insignia a agrupación o partido alguno, y en particular que lo haya permitido al Partido Nuevo Progresista si es que éste adquirió un derecho a usar dicha insignia como cesionario de, o al integrarse o fusionarse con la agrupación Progresista Federado a quien la Sala sentenciadora le reconoció el derecho a usar tal insignia.

■ (d) Tampoco se justificaría el ordenar una intervención por el hecho de que la agrupación del Sr. Rivera Ramos presentó prueba de estar recusadas todas las peticiones de inscripción en Culebra de la agrupación Progresista Federado. De acuerdo con la Sec. 37 de la Ley Electoral corresponde a la Junta Estatal de Elecciones en *primera instancia* pasar sobre la validez de tales peticiones recusadas, y no a los tribunales. El acuerdo de la Junta de 22 de agosto que dio base al recurso judicial de revisión no hizo pronunciamientos sobre este particular.

Finalmente, la posición asumida por el peticionario e interventor ante la Sala de instancia Sr. Rivera Ramos, y ante este Tribunal, no ha sido la de que le asiste el derecho, como cuestión de ley, a usar la *palma de cocos* a la luz de la prohibición contenida en la Sec. 37 de la Ley Electoral y de la Ley Núm. 1 de 23 de diciembre de 1966, independientemente de la cuestión de prioridad que pretende litigar en intervención. Hasta ahora, el interventor Rivera Ramos no ha solicitado de la Junta un pronunciamiento sobre su derecho a usar la palma de cocos como cuestión de la validez de sus peticiones de candidaturas.

(e) A la luz de todo lo anteriormente expuesto y en los términos restrictivos en que expedimos este recurso de *certiorari*, procede que se anule el auto expedido.

---

zarse por ningún candidato o partido como tal, *en papeleta de votación alguna,* desde la fecha de aprobación de esta ley hasta diez años después de celebrado el plebiscito."

*Recurso Núm. O-68-142*

Este *certiorari* se expidió para revisar la resolución de la Sala sentenciadora emitida el 6 de mayo de 1968, en el mismo procedimiento de revisión anterior. Señala la Junta en su petición de *certiorari* que el Tribunal Superior cometió error (a) al no dejar sin efecto la sentencia de 13 de febrero de 1968 y al modificarla fundamentalmente reconociendo derechos a un partido político que no era parte en los procedimientos; (b) que se cometió error al resolverse que la sentencia de 13 de febrero está en toda su fuerza y vigor y es ejecutable; y (c) al resolverse en la sentencia de 13 de febrero de 1968 que la palma de cocos es una insignia legal y apta para fines electorales.

En adición a los hechos ya expuestos, del récord surge lo siguiente más particularmente relacionado con este recurso:

(12) La parte dispositiva de la sentencia de 13 de febrero de 1968 reza textualmente así:

"SENTENCIA—Por las razones expuestas en la Opinión que antecede se revoca la resolución de la Junta Estatal de Elecciones del Estado Libre Asociado -de Puerto Rico, ordenándose la inscripción de la agrupación política a que pertenece el peticionario con el nombre de Partido Progresistas Unidos y la insignia de la Palma de Cocos una vez se radiquen en dicha Junta las declaraciones juradas de los miembros de la nueva directiva nombrada (Luis A. Ferré, Presidente; Justo A. Méndez, Primer Vice-Presidente; Carlos Romero Barceló, Jorge Luis Córdova Díaz, Jesús Hernández Sánchez, Hernán Padilla, Vice-Presidentes; José Menéndez Monroig, Secretario General; Federico Torres Campos, Tesorero) aceptando tal designación y declarando estar dispuestos a cumplir con las encomiendas de los peticionarios; y por los miembros del Organismo Central originales (Emilio Matos; Magdalena López; Antonio Roig Ferré; Gabriel Cánovas) certificando bajo juramento los acuerdos tomados por ellos y que fueron notificados en la carta jurada que la Secretaria Magdalena López envió al Superintendente de Elecciones, Lcdo. Ernesto Mieres Calimano, el 21 de agosto de 1967.—REGÍSTRESE Y NOTIFÍQUESE."

(13) En el curso de la discusión de la moción de la Junta de 14 de marzo de 1968 para que se dejara sin efecto la sentencia por académica, en razón de que el allí peticionario Emilio Matos Ríos no tenía interés en inscribir la agrupación política "Partido Progresistas Unidos", la Sala sentenciadora se expresó así refiriéndose a su propia Sentencia:

"SR. JUEZ

Si yo entiendo perfectamente al compañero. La sentencia del Tribunal dijo, mire, vamos a empezar, vamos a analizar la sentencia para ver si evitamos las discusiones que alargan innecesariamente esto.

La sentencia original en el pleito de Emilio Matos contra la Junta resolvió primero 'que la palma de cocos no es una insignia que viola la ley y que, por lo tanto, su uso está justificado como insignia para un partido político.' Segundo: 'Que el nombre de Partido Progresista Unido no es un nombre que contravenga a las disposiciones de la Ley Electoral porque la única semejanza que tiene ese nombre con el que se alega que ha aparecido, "Frente Unido Puertorriqueño" es meramente accesionaria a base del calificativo de adjetivo "Unido" y que la intención legislativa no podía ser que por el mero hecho de que un nombre tuviera una palabra que fuera conjuntiva, o que fuera accesionaria o que fuera adjetiva dentro del contexto total del nombre, fuera a ponerlo bajo las disposiciones de la prohibición de la Ley Electoral'. Tercero: Que en el pleito la parte recurrida, Junta Estatal, levantó unas defensas especiales donde decía que las peticiones radicadas por Emilio Matos, el recurrente, adolecían de ciertos defectos de ley porque no se habían cumplido con requisitos legales al radicarlas. Dijo el Tribunal entonces, 'entendemos que esos requisitos pueden ser curados y suplidos fácilmente. Cumplan los miembros del partido que representa Emilio Matos Ríos con esos requisitos.' Es decir, 'validen las peticiones de inscripción, háganlas legales y una vez que las hagan legales Junta déle a aquéllos el nombre que piden y la insignia de la palma de cocos porque no es violativo de ley alguna, según la sentencia de este Tribunal.'

La situación ahora, y ahora el Tribunal puede así hacerlo porque tiene ante sí evidencia de ello ofrecida por la propia recurrida y promovente de esta moción. . . . Posteriormente,

sin que se cumpliera el requisito de validar esas peticiones que obviamente era una condición 'sine qua non' para que se le diera el derecho del uso de la palma, el partido del peticionario se fusiona con otro partido que está aceptado como tal. A base de que el partido representado por Emilio Matos Ríos se ha fusionado con el Partido Nuevo, o sea, se ha disuelto porque se fusionó, o ha desaparecido porque se integró con el Partido Nuevo, la distinguida representación de la Junta Estatal le dice al Tribunal 'deje sin efecto su sentencia porque se torna académica porque ya Emilio Matos Ríos no tiene interés en que se le dé el nombre de Progresistas Unidos ni tiene interés en la palma de cocos porque ya él se fusionó.'

. . . . . . . .

Sr. Juez

Si la sentencia es académica, el señor Emilio Matos Ríos no tiene, y obviamente no puede tenerlo porque ya no representa a ningún partido político porque ya se fusionó con otro partido, ¿cuál es el empeño que haya un pronunciamiento dejando sin efecto la sentencia que tiene un alcance que va más allá que Emilio Matos Ríos, que es que se consagra la legalidad del uso de una insignia? (R. págs. 32–35. Sesión de 25 de abril de 1968.)

_____

Lo que le pide al Tribunal el distinguido compañero es que se deje sin efecto una sentencia porque resulta académica. Quiero que se me señale un solo fundamento de ley o jurisprudencial que me diga a mí que por el hecho de que una sentencia se hace académica porque no puede ejecutarse debe dejarse sin efecto. Si la ejecución no es una cuestión judicial. La ejecución pertenece a la parte. La ejecuta si quiere y si no quiere, no la ejecuta.

. . . . . . . .

. . . Cuando el Tribunal resuelve que era legal el uso de la palma de cocos, no era para Cataño. Si este Tribunal se equivocó, pues el foro más alto puede revocarlo y puede interpretarlo distinto. El compañero, yo no tengo la menor duda de que puede ir al Tribunal Supremo en pedido que se desestime o pedir que se revoque porque el Tribunal dijo que era válida y porque él sostiene que es ilegal, la Junta sostiene que es ilegal y

podría venir con otro recurso. Ahora, si es que esta palma la está pidiendo otra agrupación y la Junta entiende que no debe dársela, ése sería otro pleito. Ya ése sería otro pleito. Sería otro pero distinto a éste.

. . . . . . . .

SR. JUEZ

Hemos ido sobre eso y la Junta no tiene que hacerlo sino cumple con eso el señor Emilio Matos Ríos y es obvio que la Junta no podría ser nunca recurrida . . . requerida para el cumplimiento de esta sentencia. Eso es obvio. Y es así entonces porque la parte en favor de quien recayó sentencia, no está interesada que se ejecute. Que como Emilio Matos Ríos ya no tiene interés porque se fusionó y no puede cumplir con las condiciones 'sine qua non' que se le impuso, la Junta no viene obligada a darle nada porque [para] Emilio Matos Ríos la sentencia es inoperante. (R. págs. 39-40-41.)

SR. JUEZ

Creo que eso no está ante el Tribunal. Eso no es fundamento para dejar sin efecto la sentencia. Por eso le señalaba al compañero Córdova que puede traspasar lo que adquirió. Lo que no tiene, no se adquiere, no lo puede traspasar.

Aquí se plantea que se deje sin efecto una sentencia. Ahora, sería otro problema si el Partido Nuevo tiene derecho o no a la insignia de la palma. Cuando se haga ese planteamiento, se resolverá. Ésa no es la situación. Aquí es que se deje sin efecto la sentencia que reconoció la legalidad de la palma". (R. pág. 42.)

(14) Durante este incidente el allí recurrido Emilio Matos Ríos ofreció presentar prueba tendente a demostrar que la Junta venía obligada a reconocerle al Partido Nuevo Progresista la insignia de la palma de cocos, debido a que los electores que constituían la agrupación Partido Progresista Federado y los que componían el Partido Nuevo Progresista eran los mismos. Ante ese ofrecimiento de prueba, la Sala sentenciadora se expresó así:

"SR. JUEZ

Eso sería otra cuestión que no está ante la consideración del tribunal. Si el compañero cree que el Partido Nuevo tiene derecho a la insignia de la palma y que la Junta viene obligada a dársela, si la Junta se la niega, sería otro recurso. Aquí estamos ventilando el dejar sin efecto o no dejar sin efecto la sentencia que ventiló la insignia de la palma. Eso es una cuestión completamente ajena a esta controversia." (R. pág. 48)

No obstante el anterior pronunciamiento la Sala oyó la prueba ofrecida consistente de la declaración del Sr. Luis A. Ferré.

(15) Declaró el Sr. Ferré en síntesis que terminado el plebiscito del *status* el 23 de julio, existía en la organización Estadistas Unidos el deseo de organizar un partido político; que se enteró que un partido que no fue al plebiscito, y con el fin de entorpecer la creación del nuevo partido político y el uso del símbolo, estaba próximo a radicar peticiones de inscripción, un partido en Culebra con la insignia de la palma para tratar de agarrarla con prioridad a cualquier movimiento que hiciera el "Partido Estadistas Unidos". Informado de ello con gran rapidez actuaron yendo a Culebra por avión para anticipar ese movimiento, y obtener las peticiones necesarias para inscribir un partido que tuviera la palma en distintas formas como su insignia; que las personas que intervinieron en Culebra pertenecían a Estadistas Unidos; que igualmente hicieron gestiones para inscribir en Cataño con el mismo propósito de proteger la insignia; que posteriormente se reunió la organización "Estadistas Unidos", acordó disolverse y formar un partido político con el nombre de "Progresistas Unidos" y con la insignia de la palma de cocos para ese nuevo partido. Que procedieron a radicar ante la Junta Estatal de Elecciones peticiones con dicho nombre de "Progresistas Unidos" y con la insignia de la palma de cocos y que la Junta denegó la inscripción por razón de que la palma de cocos violaba la ley del plebiscito. Que en el

ínterin inscribieron el Partido Nuevo usando la insignia de la herradura como cosa temporal en lo que se inscribía la palma. Expresó el Sr. Ferré que el "Partido Nuevo" había estado utilizando la insignia de la palma de cocos desde que el Tribunal Superior de Bayamón decidió que era legal el uso de la misma.

La declaración del Sr. Ferré tendió a establecer que los que inscribieron la agrupación "Progresista Federado" en Culebra y Cataño eran las mismas personas, pertenecientes a la agrupación "Estadistas Unidos" que inscribieron también el "Partido Nuevo Progresista", partido por petición. Su posición en este incidente fue la de que siendo la misma agrupación política de electores, el Partido Nuevo Progresista tenía derecho a usar la insignia de la palma de cocos cuyo uso le había sido reconocido al Partido Progresista Federado por la sentencia de 13 de febrero de 1968.

(16) En su Resolución de 6 de mayo de 1968 para revisar la cual expedimos este recurso contiene los siguientes pronunciamientos:

"Una vez resuelto por este Tribunal y mediante la sentencia que ahora se impugna que tanto el nombre como el emblema de la palma de cocos no violaban disposición alguna de la Ley Electoral ni de la Ley del Plebiscito, procedía que la Junta cumpliera con la sentencia o apelara de la misma.

Al momento de dictarse la sentencia, ya estaba inscrito y certificado el 'Partido Nuevo Progresista'. Hemos dicho que dicho movimiento no era otra cosa que una proyección continua del movimiento que se inició en Cataño tanto por el recurrente en este caso como por el señor Luis A. Ferré y los demás que figuraban como partes en el inicio del pleito. Siendo la realidad que solo existe un único movimiento constituido por electores inspirados en un mismo propósito que era convertirse en partido por petición y estando certificado el movimiento que hoy preside el señor Luis A. Ferré y en el cual aparece como secretario el recurrente Emilio Matos Ríos, es obvio que no era necesario cumplir con los requisitos exigidos en la sentencia para que se reconociera a la agrupación 'Partido Progresista Unido'

con ese nombre y con la insignia de la palma de cocos ya que la fusión de un grupo con el otro consolidaba la personalidad de la agrupación que se vio disgregada únicamente por la razón de la negativa de la Junta al denegar la solicitud del nombre y la insignia.

. . . . . . . .

Entendemos por todo lo dicho que la sentencia en este caso tiene completa eficacia legal y surge todos sus efectos jurídicos. Los derechos adquiridos mediante la sentencia sobre el uso del nombre 'Partido Progresista Unido' y la insignia de la palma de cocos, se incorporaron con la fusión habida entre el partido del recurrente y el 'Partido Nuevo Progresista' ya certificado por la Junta que como hemos dicho es una misma agrupación o movimiento.

El mandato recibido por los miembros del Organismo Directivo Central en las peticiones de inscripción radicadas por el recurrente en Cataño autorizaba una consolidación o fusión como la llevada a cabo entre la agrupación del recurrente y la del 'Partido Nuevo Progresista'. (Véase página 4 de la Opinión y Sentencia.)

Por lo antes expuesto se resuelve que la sentencia dictada en este caso es válida, no resulta académica, está en toda su fuerza y vigor y es ejecutable. Se ordena, por tanto, a la Junta que, siendo la agrupación 'Partido Nuevo Progresista' y el 'Partido Progresista Unido' un solo movimiento que se inició como tal con un solo propósito legítimo y genuino sin que se haya establecido nada en contrario, procede otorgar el emblema de la palma de cocos y el nombre de 'Partido Progresista Unido' si así lo solicitare el recurrente a nombre de la agrupación que con el nombre provisional de 'Partido Nuevo' ya está certificada en la Junta Estatal de Elecciones. NOTIFÍQUESE.''

Conforme a lo expuesto y dictada la sentencia de 13 de febrero de 1968, nada tenía que hacer la Junta Estatal de Elecciones hacia su cumplimiento. El paso a seguir correspondía al allí recurrido Emilio Matos Ríos y su organización.

En su moción de 14 de marzo la Junta solicitó un pronunciamiento para dejar sin efecto la sentencia o que se

declarara académica en razón a las actuaciones del Sr. Matos Ríos y su agrupación Progresista Federado posteriores a la sentencia dictada. Por sus propios términos la sentencia dictada era ineficaz mientras Matos Ríos y su agrupación no actuaran acorde con lo dispuesto en ella.(⁵)

Procedía que la Sala sentenciadora dictaminara, bien dejando sin efecto su fallo o relevando a la Junta de su cumplimiento o ya negándose a ello, en lo que al procedimiento de revisión administrativa que tenía ante sí respecta.

 Eran improcedentes, en ese recurso de revisión administrativa, los pronunciamientos hechos a favor del Partido Nuevo Progresista haciéndolo beneficiario del derecho adjudicado a favor de otra parte en el referido procedimiento de revisión, y bajo el supuesto de que Matos Ríos y su agrupación y el Partido Nuevo eran los mismos electores.

El Partido Nuevo era una entidad política con personalidad propia una vez que fue inscrito como Partido por petición. No fue parte en los procedimientos administrativos que dieron lugar al recurso de revisión, ni fue parte tampoco ni intervino en el procedimiento judicial que siguió.(⁶)

Al hacer dichos pronunciamientos la Sala actuó en instancia primaria como si éste fuera un pleito de su jurisdic-

---

(⁵) La posición de la Junta realmente era que la *relevaran* de los efectos de esa sentencia. La Regla 49 de las de Procedimiento Civil dispone que el Tribunal puede relevar a una parte de una sentencia, orden o procedimiento por:

. . . . . . . .·.

(5) La sentencia ha sido satisfecha, *renunciada* o se ha cumplido. . . .

Los hechos ocurridos después de la sentencia demuestran que Matos Ríos y su agrupación renunciaron a exigir de la Junta el cumplimiento de la misma.

(⁶) Precisamente, los peticionarios originales Sres. Ferré, Menéndez Monroig y Magdalena Otero fueron eliminados del recurso de revisión y se desestimó en cuanto a ellos por no ser ellos peticionarios ante la Junta, y estar faltos de capacidad para reclamar. Sentencia de la Sala de San Juan del Tribunal Superior de 15 de septiembre de 1967. Aun cuando no se hubieran eliminado, ellos, como tales demandantes, eran personas distintas de la entidad jurídica Partido Nuevo.

ción general y no un procedimiento de revisión a base del récord o expediente administrativo bajo la Sec. 37 de la Ley Electoral.

La más reciente legislación electoral indica una clara política pública legislativa de que las controversias electorales se resuelvan en primer lugar en el organismo administrativo especialmente designado para manejar tales asuntos, la Junta Estatal de Elecciones. Aquellas ejecutorias que la legislación anterior situaba en el Secretario de Estado, atacables mediante demandas judiciales de la jurisdicción general de las Cortes, han pasado a la Junta o al Superintendente, atacables ahora por las vías de revisión que ofrece la propia Ley Electoral.

No había lugar en este procedimiento para la prueba que ofreció el Sr. Ferré mediante su declaración, y que indudablemente fue la base de aquellos pronunciamientos en la Resolución de 6 de mayo que declararon ejecutable la sentencia de 13 de febrero ordenando a la Junta a otorgar el emblema de la palma de cocos y el nombre de "Partido Progresista Unido" a la entidad "Partido Nuevo" ya certificada como partido político.

Por los fundamentos expresados, procede anular tales pronunciamientos.

■ Eliminados dichos pronunciamientos, resta en el récord una sentencia de 13 de febrero de 1968 ya carente de eficacia y efecto por sus propios términos al 25 de abril de 1968, fecha en que se vio la moción de la Junta de 14 de marzo; no ejecutable a esa fecha dicha sentencia. Así debió haberlo dictaminado la Sala sentenciadora en su Resolución de 6 de mayo de 1968.

Esta decisión en nada prejuzga, en un sentido u otro, el derecho que pueda tener o no el Partido Nuevo a reclamar ante la Junta, allí representado, el uso de la palma de cocos como emblema en la papeleta electoral, ni prejuzga en forma

alguna la decisión que pudiera hacer la Junta, si tal solicitud se hiciere.

Se dictará sentencia:

*(i) Anulando el auto de certiorari expedido en el recurso O-68-120; y*

*(ii) Anulando la Resolución recurrida de 6 de mayo de 1968 en el recurso O-68-142, y decretando que la Sentencia de 13 de febrero de 1968 es ineficaz, carente de efecto, y no ejecutable. Se devolverán los autos al tribunal de instancia.*

El Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Pérez Pimentel y Torres Rigual no intervinieron. El Juez Asociado Señor Hernández Matos disintió en el Recurso Núm. O-68-142. El Juez Asociado Señor Blanco Lugo emitió una Opinión Concurrente en el Recurso O-68-120, en la cual concurre el Juez Asociado Señor Ramírez Bages. El Juez Asociado Señor Rigau emitió un voto separado concurriendo en parte y disintiendo en parte.

—O—

Opinión concurrente del Juez Asociado Señor Blanco Lugo en la cual concurre el Juez Asociado Señor Ramírez Bages

San Juan, Puerto Rico, a 28 de junio de 1968

Desde el día 25 de agosto de 1967 Emilio Matos Ríos inició gestiones judiciales para que se dejara sin efecto una resolución de la Junta Estatal de Elecciones de fecha 21 anterior que denegó "la solicitud hecha por la agrupación 'Progresista Federado' " para que (i) se cambiara su nombre de Partido Progresista Federado a Partido Progresistas Unidos, (ii) se eliminaran las insignias de la palma real y las palmas cruzadas sometidas en las peticiones de inscripción y se dejara únicamente la palma de cocos como insignia de la mencionada agrupación, y (iii) se sustituyera la directiva por otras personas mencionadas en la solicitud. Cinco

meses y medio después, (¹) en 13 de febrero de 1968, recayó sentencia favorable al peticionario. Se revocó la resolución impugnada y se ordenó, previa la radicación en la Junta Estatal de ciertos documentos, la inscripción de la agrupación política con el nombre de Partido Progresistas Unidos y la insignia de la palma de cocos.

. No es hasta el 19 de febrero que Carlos Westerband y Modesto Rivera Ramos, en su carácter de presidentes de dos agrupaciones denominadas Frente Unidos Puertorriqueño y Partido Federal Unionista Agrícola, solicitan intervención alegando que la sentencia dictada les afectaba en forma adversa y directa. Después de una vista durante la cual los pretensos interventores presentaron prueba testifical y documental, el tribunal de instancia declaró sin lugar la solicitud de intervención. (²)

No incidió el tribunal de instancia. Las Reglas 21.1 y 21.2 constituyen el derecho aplicable. (³) La intervención

---

(¹) Luego de varios incidentes preliminares sobre desestimación—que dio margen a una sentencia parcial—y traslado, en 9 de octubre se concedió a las partes un término de 20 días para presentar cierta prueba documental y memorandos, a cuyo recibo se entendería el pleito sometido para decisión. En 24 de noviembre se accedió a una solicitud de prórroga de 10 días pedida por el demandante; en 5 de diciembre se concedió un término adicional improrrogable de 10 días que vencería el 15 de diciembre para radicar el memorando.

(²) Por haber desistido Matos Ríos del uso de la palabra *Unidos* en el nombre de su agrupación cualquier intervención de Westerband es académica.

(³) "21.1. *Como cuestión de derecho*

"Mediante oportuna solicitud, cualquier persona tendrá derecho a intervenir en un pleito (a) cuando por ley o por estas reglas se le confiere un derecho incondicional a intervenir; o (b) cuando la representación del interés del solicitante por las partes ya en litigio fuere o pudiere resultar inadecuada y el solicitante fuere o pudiere ser afectado por la sentencia en el pleito; o (c) cuando el solicitante pudiere ser afectado adversamente por una distribución o cualquier otra disposición de propiedad que se hallare bajo la custodia o sujeta al control o poder de adjudicación del tribunal."

"21.2. *Intervención permisible*

"Mediante oportuna solicitud podrá permitirse a cualquier persona intervenir en un pleito: (a) cuando por ley se le confiera un derecho

después de dictada una sentencia no es usual, reviste carácter excepcional, y sólo poderosas razones la justifican. Debe demostrarse que los interventores quedarán obligados por las resultancias del fallo, *Mercado Riera* v. *Tribunal Superior*, 89 D.P.R. 276, 281 (1963), *Gerena* v. *Lamela,* 79 D.P.R. 578 (1956), y que posiblemente queden expuestos a que se les oponga la excepción de cosa juzgada, Barron y Holtzoff, *Federal Practice and Procedure*, vol. 2, § 597, pág. 373. No estamos convencidos de que los pronunciamientos de la sentencia afecten cualquier derecho que pueda reclamar Modesto Rivera Ramos sobre la insignia de la palma basándose en el supuesto de prioridad en su uso a que se refiere en su solicitud de intervención como "antelación en el tracto registral".

Por otro lado, considerada la solicitud como una de intervención permisible, Regla 21.2, el criterio normal para determinar su procedencia reside en la discreción del tribunal, guiada por las disposiciones de la propia regla que requiere "oportuna solicitud" y la consideración de si "la intervención dilatará indebidamente o perjudicará la adjudicación de los derechos de las partes originales." Véase, Barron y Holtzoff, *op. cit.,* § 594, págs. 365–366. Es innegable que la solicitud se presentó en el último momento posible y no cabe duda de que permitir la intervención a estas alturas perjudicará a las partes originales demorando la adjudicación final de una controversia que por la proximidad de las elecciones generales de 1968 debe resolverse pronta y definitivamente.

---

condicional a intervenir; o (b) cuando la reclamación o defensa del solicitante y el pleito principal tuvieren en común una cuestión de hecho o de derecho. Cuando una parte base su reclamación o defensa en cualquier ley u orden ejecutiva cuya ejecución está a cargo de un funcionario o agencia gubernamental o en un reglamento, orden, requerimiento o acuerdo promulgado, expedido o celebrado de acuerdo con dicha ley u orden ejecutiva, podrá permitírsele al funcionario o agencia intervenir en el pleito mediante solicitud oportuna. Al ejercer su discreción, el tribunal considerará si la intervención dilatará indebidamente o perjudicará la adjudicación de los derechos de las partes originales."

Además, la única cuestión común de hecho y de derecho que pueden tener los interventores en el pleito principal se refiere al uso de la insignia de la palma para fines electorales, y en este respecto, su posición no es antagónica, sino más bien germana, con la del demandante. Su comparecencia sólo injertaría la controversia sobre la prioridad en el uso de dicha insignia, y esto claramente introduce un nuevo *issue*. En estos casos la intervención no es favorecida. Barron y Holtzoff, *op. cit.*, § 597 pág. 376. Véase además, Moore, *Federal Practice* (2a. ed.), vol. 4, § 24.10.

Finalmente no podemos desapercibir que el esfuerzo de los interventores, según revela la prueba y sus propios actos y manifestaciones,(4) no está genuinamente dirigido a reclamar una insignia para la gesta comicial, sino más bien a impedir que se utilice por la agrupación de Matos Ríos.

Debe confirmarse la resolución del tribunal de instancia que negó la intervención.

—0—

Voto separado del Juez Asociado Señor Rigau

San Juan, Puerto Rico, a 28 de junio de 1968

Concurro en parte con pero disiento en parte de la opinión del Tribunal. Concurro con el resultado de dicha opinión en tanto en cuanto decide que son nulas e ineficaces la sentencia del 13 de febrero de 1968 y la resolución de 6 de mayo del mismo año, del Tribunal Superior, Sala de Bayamón.

Disiento sin embargo con la opinión del Tribunal en cuanto a la forma en que dispone de este asunto. Creo que el Tribunal debió entrar a considerar y que debió resolver

---

(4) En la moción presentada ante el tribunal de instancia se dice al referirse a la palma de cocos "si es que el uso electoral de la palma de cocos como insignia es permitido" y "si es que la palma de cocos se permite como insignia a pesar de haber sido de hecho usada junto a la palma real en la campaña plebiscitaria."

la cuestión central de este litigio, que consiste en si es legalmente permisible o no el uso de la insignia de la palma de cocos por un partido político en las papeletas electorales en las elecciones a celebrarse en Puerto Rico en noviembre de 1968. Que ese es el *issue* principal de este pleito lo argumentó el propio peticionario en su alegato de 17 de junio de 1968 y en su exposición oral en la vista celebrada en este Tribunal el día 20 de este mes de junio.

Nuestra intervención en el asunto central de estos procedimientos se hizo posible como cuestión de procedimiento porque el tribunal de instancia mediante su resolución de 6 de mayo de 1968 enmendó sustancialmente su sentencia de febrero 13 del mismo año y resolvió el asunto en los méritos. En vista de eso quedaba abierto a revisión por nosotros lo resuelto por el tribunal de instancia en la citada resolución de mayo 6.

Al no resolver el Tribunal la cuestión central de este litigio lo que el Tribunal en efecto le ha dicho a las partes es lo siguiente: "El Tribunal Superior, Sala de Bayamón, erró en febrero 13 y en mayo 6 de 1968. Empiecen de nuevo."

Creo que la Junta Estatal de Elecciones y los partidos políticos que favorecen la estadidad federada deben saber cuanto antes cuál es la situación legal sobre esta cuestión pues podemos presumir que la Junta necesita imprimir las papeletas y los partidos políticos necesitan diseñar, imprimir y utilizar su material de propaganda para las elecciones que se avecinan.

Por todas estas razones, en vez de invitar a un nuevo litigio yo hubiese resuelto ahora el planteamiento relativo al uso o no uso de la insignia de la palma de cocos en las papeletas electorales.